PEOPLE v PETERSON

Opinion of the Court

1. Searches and Seizures—Warrants—Search Warrants—Evidence—Informants—Reliability—Prior Dealings.

A history of prior dealings between an informant and the police is not necessary to establish the informant's reliability before a magistrate who is considering application for a search warrant; the magistrate may look at those portions of an informant's information which are independently verified by police, and other factors supporting the probable truthfulness of the information, in determining the informant's reliability.

2. Searches and Seizures—Warrants—Search Warrants—Affidavits—Police Officers—Informants—Magistrates.

A police officer seeking a search warrant on the basis of information supplied by an informant must, in an affidavit supporting the warrant, furnish a magistrate with the facts from which the officer concluded that the informant was credible or his information reliable.

3. Criminal Law—Police Officers—Informants—Probable Cause.

A police officer may properly rely upon information received through an informant to establish probable cause for action on his part where the informant's statement is reasonably corroborated by other matters within the officer's knowledge.

REFERENCES FOR POINTS IN HEADNOTES
[1] 68 Am Jur 2d, Searches and Seizures § 30.
[2] 68 Am Jur 2d, Searches and Seizures § 65.
[3] 68 Am Jur 2d, Searches and Seizures § 42.
[4] 75 Am Jur 2d, Trial § 758 et seq.
[5] 30 Am Jur 2d, Evidence §§ 1125, 1126.
[6] 30 Am Jur 2d, Evidence § 1086.
   75 Am Jur 2d, Trial §§ 336, 489.
[7] 58 Am Jur 2d, New Trial §§ 143, 147.
[8–10] 68 Am Jur 2d, Searches and Seizures § 64 et seq.

4. DRUGS AND NARCOTICS—MARIJUANA—STATUTES—PRESUMPTIONS—
   POSSESSION—INTENT—INSTRUCTIONS.

   The statute which provides that possession of more than two
   ounces of marijuana gives rise to a presumption of possession
   with intent to deliver is unconstitutional; it is reversible error
   to instruct on such a presumption (MCLA 335.341[2]).

5. CRIMINAL LAW—EVIDENCE—PROSECUTION—THEORY OF INNOCENCE
   —CIRCUMSTANTIAL EVIDENCE.

   The prosecution has the burden of proving that there is no theory
   of innocence possible which will, without violation of reason,
   accord with the facts, where its case is based on circumstantial
   evidence.

6. CRIMINAL LAW—EVIDENCE—MARIJUANA—POSSESSION—INFER-
   ENCES—INTENT—MOTIONS FOR DIRECTED VERDICT—JURY.

   A criminal defendant's motion for a directed verdict of acquittal
   on a charge of possession of marijuana with intent to deliver
   was improperly denied where the quantity of marijuana seeds
   possessed by the defendant was so slight that reasonable jurors
   could not infer an intent to deliver and there was no other
   evidence on the question of the defendant's intent.

CONCURRENCE BY D. E. HOLBROOK, J.

7. CRIMINAL LAW—CONVICTIONS—NEW TRIAL—EVIDENCE—CIRCUM-
   STANTIAL EVIDENCE—CHARGES—SUBMISSION TO JURY.

   An appellate court which reverses a criminal conviction based
   upon circumstantial evidence and remands the case for a new
   trial should let the evidence produced at the new trial deter-
   mine whether the original charge was properly submitted to
   the jury.

CONCURRENCE IN PART AND DISSENT IN PART BY BRONSON, J.

8. SEARCHES AND SEIZURES—WARRANTS—AFFIDAVITS—VALIDITY—
   PROBABLE CAUSE.

   The validity of a search warrant is entirely dependent upon the
   validity of the affidavit which supports its issuance; an examin-
   ing magistrate must satisfy himself that the affidavit contains
   sufficient information to establish probable cause to search the
   place mentioned and seize the items described, and the affidavit
   is judged solely on the basis of the information it contains.

9. Searches and Seizures—Warrants—Affidavits—Hearsay—Informants—Magistrates.

An affidavit supporting issuance of a search warrant may be based on the hearsay reports of others, but such hearsay can be accepted by an examining magistrate only if there is reason to believe it; the magistrate must be apprised of both the honesty of an informant and the basis for his report.

10. Searches and Seizures—Warrants—Affidavits—Hearsay—Informants—Probable Cause.

*An affidavit supporting issuance of a search warrant and based on information supplied by informants was not sufficient to provide the basis for a finding of probable cause where it did not indicate the basis for the affiant's conclusion that the informants were reliable or that their information was credible, and the one independent corroborative allegation in the affidavit could not support an inference that the informers were generally trustworthy.*

Appeal from Delta, Bernard H. Davidson, J. Submitted March 3, 1975, at Grand Rapids. (Docket No. 19187.) Decided August 25, 1975.

Robert N. Peterson was convicted of possession of marijuana with intent to deliver. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Tony I. Marcinkewciz,* Prosecuting Attorney (Prosecuting Attorneys Appellate Service, *Edward R. Wilson,* Director, and *Howard C. Marderosian,* Special Assistant Attorney General, of counsel), for the people.

*Dennis H. Benson,* Assistant State Appellate Defender, for defendant.

Before: D. E. Holbrook, P. J., and Bronson and M. J. Kelly, JJ.

M. J. Kelly, J. Defendant-appellant, Robert Ned Peterson, appeals by right from his November 6,

1973 conviction for possession of marijuana with
intent to deliver, MCLA 335.341(1)(c); MSA
18.1070(41)(1)(c). A sentence of 30 days in jail and
two years' probation was imposed on November 13,
1973 and stayed by the trial judge pending the
outcome of this appeal.

Three issues are raised for our consideration:
the legality of the search and seizure, the applica-
tion of the "two-ounce presumption" and the suffi-
ciency of the evidence. All will be discussed.

I

The house in which Peterson then resided was
searched by Escanaba and Michigan State Police
officers during the early morning of April 25, 1973.
A quantity of what appeared to be marijuana was
seized and Peterson, among others, was arrested.

The search was conducted pursuant to a war-
rant issued on the basis of the following affidavit:

"On April 24, 1973 I have been informed by two
apparently reliable anonymous citizens that in the
above residence of one Kevin Johnson there is secreted
a quantity of what was described as marijuana, and was
given a sample of the substance described to me as
being a part of that substance and I performed a
chemical field test of the substance and the result of
said chemical test showed the presence of marijuana a
controlled substance.

"Based upon their actual observation, and description
of the substance in the residence and the sample deliv-
ered to me and the results of the aforesaid test, I am of
the opinion probable cause exists to believe a violation
of the Controlled Substance Act of 1972 has and is now
occurring and that the aforesaid residence is used as a
'stash' for the aforesaid controlled substance.

"The informants described the material as bagged in
plastic baggies and was of a green leafy nature and

described as nickle bags and had actually seen said materials within forty-eight hours from above date."

All of the real evidence introduced against Peterson at trial was obtained as a result of the search of his residence. He moved to suppress this evidence prior to trial, arguing that the search warrant was constitutionally defective. The validity of the search warrant depends on the sufficiency of the affidavit in support of its issuance.

Defendant suggests that prior dealings between the affiant and informant are necessary. If this were true, then every informant whose anonymity is protected would have his first case thrown out. In fact, the law is otherwise:

"While a history of prior dealings between an informant and the police can be an important element in establishing the reliability of the informant, the absence of such a history does not of itself prove the informant unreliable. The magistrate is entitled to look to the underlying circumstances, including those portions of the information independently verified by police, and to other factors supporting the probable truthfulness of the information." *United States v Wong,* 470 F2d 129, 131 (CA 9, 1972).

The crucial test is stated in *Aguilar v Texas,* 378 US 108, 114; 84 S Ct 1509; 12 L Ed 2d 723 (1964). That case requires, in the disjunctive, that the magistrate be furnished facts from which the officer "concluded that the informant * * * was 'credible' *or* his information 'reliable' ". (Citation omitted.) In *Jones v United States,* 362 US 257; 80 S Ct 725; 4 L Ed 2d 697 (1960), the US Supreme Court noted that:

"In testing the sufficiency of probable cause for an officer's action even without a warrant, we have held

that he may rely upon information received through an informant, rather than upon his direct observations, *so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge.*" 362 US at 269. (Emphasis supplied.)

Defendant makes much of the fact that the affidavit refers to "apparently reliable anonymous citizens". As Judge BRONSON points out, this phrase taken alone does not meet the *Aguilar* requirement of adequate facts for the magistrate to pass on the informant's credibility. However, that is not the sole question, for constitutional muster is passed if the affidavit recites sufficient facts for a magistrate to conclude that the information was reliable. *Aguilar v Texas, supra.* And, pursuant to *Jones v United States, supra,* it is appropriate to look at the contents of the affidavit beyond the words "apparently reliable anonymous citizens" to see whether there is evidence "reasonably corroborat[ing]" the informant. In so doing, it should be kept in mind that "[t]he rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating * * * often opposing interests". *Beck v Ohio,* 379 US 89, 91; 85 S Ct 223; 13 L Ed 2d 142 (1964), quoting *Brinegar v United States,* 338 US 160; 69 S Ct 1302; 93 L Ed 1879 (1949). It should also be apparent that the reliability that Judge BRONSON finds wanting is a requirement designed to protect against knowingly false or inadvertently erroneous information given by the informant to the officer.

In this case the incriminating information came from two citizens. Such information is perhaps more likely to be reliable than information which depends solely on the veracity of one person. The description of the substance appears to coincide

with the experienced officer's knowledge of the appearance of marijuana. It is fair to infer that the informants knew marijuana when they saw it. Therefore, the affiant and magistrate could discount the possibility that the informants had mistakenly identified a licit substance as marijuana. The officer's field test verified that the substance was marijuana—the informants were proven truthful in that particular. Also, the act of turning over marijuana to the police could itself be considered a reliability credential. If the search of defendant's premises had proved fruitless, undesired attention might have focused on the informants themselves. It is one thing for an informant to tell an officer that there is an illegal substance at such and such a place and it is another for the informant to produce a sample. The sample makes the story more convincing.

In the context of this case, the dangers *Aguilar* seeks to protect against are satisfied. Otherwise we are straining to protect against the vague possibility that two citizens delivered an illicit substance from an unknown source to a police officer to falsely incriminate the defendant. That would be a serious crime committed openly. Considering the facts related to the magistrate, I am inclined to find this probability less than the probability that the information given was accurate in material part. To be sure, the claims of the informants had not been substantiated in all respects. However, those claims had been substantiated in a number of important respects. The affidavit was sufficient to support the search warrant and no error was committed by introducing the marijuana into evidence. Still the conviction must be reversed.

II

At trial, the prosecutor relied on and the trial

court instructed on the two-ounce presumption embodied in MCLA 335.341(2); MSA 18.1070(41)(2). That presumption is unconstitutional. *People v Serra,* 55 Mich App 514; 223 NW2d 28 (1974). Reliance on the unconstitutional statute was reversible error.

Equally fundamental is the fact that the presumption was inapplicable to the present case. A search of the residence uncovered about 7-1/2 ounces of marijuana. Of that amount, 5.6 ounces were found under a pile of dirty clothes in the room of Kevin Johnson. No testimony connected defendant with this particular marijuana. The rest of the marijuana amounted to slightly less than two ounces. Thus, there was no evidence that *defendant* possessed more than two ounces. Instruction on the statutory presumption suffered a double infirmity. It was inapplicable to the facts and unconstitutional.

## III

Defendant also complains that the trial court erred in denying his request for a directed verdict of acquittal. The prosecution's proofs revealed that the search warrant was executed one morning at about 1:30 a.m. Defendant was bathing and Kevin Johnson was sleeping. The residence consisted of three bedrooms and a music room, each of which contained at least one mattress. Defendant was the lessee of the flat, but the landlord understood that others would also live there. The undisputed testimony was that a number of rent-paying residents and guests had lived in the home.

No marijuana was found on defendant's person or in the clothes he donned when arrested. None was found in the bathroom or in the bedroom from

which defendant got his clothes, presumably his bedroom. In short, the police found no marijuana in the areas over which defendant had exclusive control.

As noted above, the largest package of marijuana was found in Kevin Johnson's room. Other small packets of marijuana were found in the third bedroom which, all evidence suggests, was used by an unnamed third party. There is nothing at all to connect defendant to this marijuana. Proof of defendant's identity as the possessor of the marijuana found in the bedrooms of others was entirely lacking. Those packets form no basis for defendant's conviction.

Other packets were found in "common areas" such as the music room and living room. To these areas, all residents had access. As noted by Judge (now Justice) LEVIN in his opinion for this Court in *People v Davenport*, 39 Mich App 252, 256; 197 NW2d 521 (1972): "[Defendant] cannot be convicted on the theorem that *someone* must have been in possession of the heroin". Here, as in *Davenport*, there is nothing to show that defendant knew of the presence of the marijuana. Compare *People v Valot*, 33 Mich App 49; 189 NW2d 873 (1971). As in *Davenport*, the prosecutor in the instant case failed to prove that it was defendant, not one of the other residents, that placed the marijuana in the common areas.

The only contraband which was connected to defendant was found in a box in the hall closet. A manila envelope containing marijuana seeds was found in the box. Also in the box was the title to defendant's motorcycle. The Court in *People v Davenport, supra,* noted:

"The evidence in this case regarding possession of the

heroin is entirely circumstantial. The established rule is that where the people's case is based on circumstantial evidence the prosecution has the burden of proving 'that there is no innocent theory possible which will, without violation of reason, accord with the facts'." 39 Mich App at 256. (Citations omitted.)

While the case is extremely close, reasonable jurors might find from the presence of the motorcycle title that defendant knew of the presence of the marijuana. The inference is not compelling; we find only that it is permissible. *People v Valot, supra.* The prosecution established a prima facie case of possession; and whether it is possession beyond a reasonable doubt should be left for the jury. The trial judge properly left to the jury the determination of the lesser offense of simple possession.

As to the charged offense of possession with intent to deliver, we find insufficient evidence. It should again be emphasized that the only marijuana that the jury could properly find defendant possessed consisted of the seeds found in the manila envelope. This Court recently said in *People v Serra, supra:*

"Prosecutions involving large amounts of marijuana will not require a presumption to convince a jury that the possessor intended something other than personal use; the inference may follow of its own force. When smaller amounts are at issue, the prosecutor can introduce evidence of the kind he suggests the defendant should be forced to use; expert witnesses and acquaintances of the defendant. The jury will then be left, unfettered by presumptions of any kind, to weigh the evidence on both sides and resolve the question before it." 55 Mich App at 525.

Where the quantity is large, the intent to de-

liver may be a permissible inference. Here, however, the quantity of seeds possessed was so slight that we are constrained to find that reasonable jurors could not infer the intent to deliver from that quantity. There was no other evidence on the question of defendant's intent. It was therefore error for the trial judge to deny defendant's motion for a directed verdict of acquittal on the charged offense.

Reversed and remanded for retrial on the charge of possession only.

D. E. HOLBROOK, P. J. *(concurring)*. I agree with my Brother, Judge KELLY, and his opinion as to the first issue, believing that the search warrant was proper and the evidence obtained thereunder was admissible. I would likewise reverse for a new trial, but upon the original charge, rather than just the possession charge. The evidence produced at the new trial would determine whether or not the original charge was proper to be submitted to the jury or only the possession charge.

BRONSON, J. *(concurring in part, dissenting in part)*. I agree with Judge KELLY's analysis in parts II and III of his opinion, and concur in the result of reversing the case and remanding for retrial on the charge of possession only. However, I disagree with his treatment of the search warrant issue in part I. I must dissent to that part of Judge KELLY's opinion which upholds the trial court's denial of the motion to suppress. The evidence seized pursuant to that warrant should not be allowed into evidence upon retrial.

The validity of any search warrant depends entirely on the validity of the affidavit which supports its issuance. A search warrant is issued when the examining magistrate satisfies himself

that the affidavit offered in support thereof contains sufficient information to establish probable cause to search the place mentioned and seize the items described. The affidavit must be judged solely on the basis of the information it contains. If it is invalid on its face, then any search warrant it supports is defective and any search conducted in reliance on it is unreasonable. *Spinelli v United States,* 393 US 410, 413, fn 3; 89 S Ct 584; 21 L Ed 2d 637 (1969). Accordingly, we proceed to determine whether the affidavit supporting the search warrant in this case contains sufficient information to justify a conclusion that probable cause existed to subject defendant Peterson to a search of his residence.

Aside from the field test conducted by the affiant, all of the information in the affidavit was supplied by informants. While it is true that an affidavit may be based on the hearsay reports of others, *Brinegar v United States,* 338 US 160, 172–173; 69 S Ct 1302; 93 L Ed 1879 (1949), such hearsay can be accepted by the magistrate only if there is reason to believe it. This requirement is aptly stated for our purposes in *Aguilar v Texas,* 378 US 108; 84 S Ct 1509; 12 L Ed 2d 723 (1964):

"Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, [citation omitted], the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, [citation omitted], was 'credible' or his information 'reliable.' Otherwise, 'the inferences from the facts which lead to the complaint' will be drawn not 'by a neutral and detached magistrate,' as the Constitution requires, but instead, by a police officer

'engaged in the often competitive enterprise of ferreting out crime,' [citations omitted], or, as in this case, by an unidentified informant." *Aguilar, supra,* at 114–115.

In other words, the magistrate must be apprised both of the "honesty of the informant and the basis for his report". *Spinelli, supra,* at 424 (White, J., concurring).

The instant affidavit furnishes the circumstances underlying the affiant's belief that there was marijuana in Peterson's residence, since it summarizes the recent, personal observations of the informants. *United States v Harris,* 403 US 573, 579; 91 S Ct 2075; 29 L Ed 2d 723 (1971). This satisfies the first part of the *Aguilar* test. However, the affidavit nowhere indicates on what basis the affiant concluded that the informants were reliable or that their information was credible.[1]

The prosecutor in his brief stresses the quality of the information obtained from the informants as proof of their reliability. In so doing, he confuses the two quite distinct elements of the *Aguilar* test, the same mistake apparently made by both the affiant and the examining magistrate.

To say that the informants accurately described the residence, listed the substances to be found therein, and produced a sample of those substances which proved to be marijuana is to beg an important question. This information will support at most the conclusion that there is an ample basis for the informants' allegations *if the information is accurate.* To be sure, *if* the informants observed the marijuana inside the described residence and *if* they then brought a sample of that same mari-

---

[1] The prosecutor suggests that the demeanor of the informants led the affiant to believe that they were telling the truth. Since this information was not included in the affidavit, it cannot be considered. *United States v Spinelli, supra,* at 413, fn 3.

juana to the police, probable cause to search would be established. However, the affidavit does not provide us with any reason to believe that the informants saw the things they claimed to have seen or did the things they claimed to have done.

The affiant does not maintain that he or anyone else has had any prior dealings with these informants in which they have proven reliable. Compare *Jones v United States,* 362 US 257; 80 S Ct 725; 4 L Ed 2d 697 (1960). Testimony taken at the preliminary examination reveals that none of the officers had any knowledge of previous instances of reliable reporting on the part of the informants.

Evidence of prior trafficking in contraband can be used to substantiate an informant's report. See *Jones v United States, supra; Nathanson v United States,* 290 US 41, 46; 54 S Ct 11; 78 L Ed 159 (1933). However, there is no indication that Peterson is known by the police as a user or seller of harmful drugs. In fact, police witnesses at trial admitted that he did not have a reputation in either capacity. In addition, none of the officers had any personal knowledge that Peterson's background included use or sale of drugs. Compare *United States v Harris, supra.*

Nor can the informants' report be characterized as a declaration against penal interests, as was true of the informant in *United States v Harris, supra.* In *Harris* the informant admitted committing a crime to the police. Admissions of crime are said to carry with them "indicia of credibility" sufficient at least to support as reliable the reports of the informant who makes the admission. *United States v Harris, supra,* at 583. In the present case the informants have not admitted a crime. They did not say that the marijuana they carried with them belonged to them. They did not tell the

police that they used marijuana or that they purchased any marijuana from Peterson or anyone else. On the contrary, the trial testimony indicates that the informants claim to have taken the sample from Peterson's residence in order to turn it over to the police. These circumstances do not lend credibility to their statements. Compare *United States v Harris, supra,* at 584.

This affidavit does not even contain the bare conclusory allegation that the informants are reliable, the type of self-serving claim held insufficient in *Spinelli, supra.* The affiant here was unwilling to go so far—he could only refer to the informants as "apparently reliable".

I must conclude that the information supplied by the informants' tip does not satisfy the *Aguilar* requirement that the informants be shown to be reliable. Next, it must be determined whether the "other allegations which corroborate the information contained in the hearsay report" are sufficient to meet the *Aguilar* test. *Spinelli v United States, supra,* at 415.

The only corroborative allegation in the affidavit concerns the field test by which the affiant concluded that the sample provided by the informants was marijuana. While this test quite properly assisted the affiant in determining that the informants had a basis for their report, it is insufficient to allow him to conclude that the report is truthful. We have no way of knowing where the marijuana sample came from *unless* we believe the informants' story. That the field test proved positive provides no additional reason for believing that the marijuana came from Peterson's residence, however much it makes the belief that the sample is marijuana legitimate. And that the informants did not lie when they said the sample

was marijuana cannot alone provide corroboration for all of their other allegations. See *Spinelli v United States, supra,* at 425–429 (White, J., concurring). We do not have a case involving the kind of self-executing corroboration exhibited in *Draper v United States,* 358 US 307; 79 S Ct 329; 3 L Ed 2d 327 (1959), where the police independently verified all but one detail of an informant's extraordinarily thorough description. The independent corroboration here, like that present in *Spinelli,* is inadequate to support the informants' report:

"This cannot by itself be said to support * * * the inference that the informer was generally trustworthy * * * ." *Spinelli, supra,* at 417.

Careful study of the affidavit submitted in support of the application for the search warrant has convinced me that a conclusion that the informants supplying the tip were a reliable source of information is impermissible.[2] What was said in *Spinelli, supra,* deserves repetition here:

"We conclude, then, that in the present case the informant's tip—even when corroborated to the extent indicated—was not sufficient to provide the basis for a finding of probable cause. This is not to say that the tip was so insubstantial that it could not properly have counted in the magistrate's determination. Rather, it needed some further support. When we look to the other parts of the application, however, we find nothing alleged which would permit the suspicions engendered by the informant's report to ripen into a judgment that a crime was probably being committed." *Spinelli, supra,* at 418.

---

[2] *Cf.* the affidavit in *People v Iaconis,* 29 Mich App 443; 185 NW2d 609 (1971), *aff'd sub nom People v Bercheny,* 387 Mich 431; 196 NW2d 767 (1972).