PEOPLE v WILLIAMS

Docket No. 257357. Submitted October 6, 2005, at Marquette. Decided
    October 13, 2005, at 9:15 a.m. Leave to appeal sought.
    John T. Williams, Jr., was convicted by a jury in the Otsego Circuit
      Court of possession with intent to deliver less than five kilograms
      of marijuana. The court, Alton T. Davis, J., sentenced the defen-
      dant as a subsequent drug offender to a prison term of 38 to 96
      months. The defendant appealed, arguing that there was insuffi-
      cient evidence and that the trial court improperly departed from
      the sentencing guidelines.
        The Court of Appeals *held*:
        1. The defendant was not denied due process because there
      was sufficient evidence to support his conviction. Circumstantial
      evidence and reasonable inferences that arise from such evidence
      can constitute satisfactory proof of the elements of a crime. The
      prosecution need not rebut all theories that could prove a defen-
      dant innocent, but need only submit evidence sufficient to con-
      vince a reasonable jury of the existence of the elements in the face
      of whatever contradictory evidence the defendant provides.
        2. With regard to the element of possession, constructive
      possession exists if the defendant knew that the controlled sub-
      stance was present and had the right to exercise control over it,
      that is, if the totality of the circumstances indicates a sufficient
      nexus between the defendant and the substance. Possession may
      be joint, with more than one individual constructively possessing
      the contraband, and constructive possession may be found even if
      the defendant is not the owner. A rational trier of fact could find a
      sufficient nexus in this case from the defendant's admissions that
      he knew the marijuana was present in the attic, that his money
      had gone toward its purchase together with money from his
      roommates, and that his fingerprints might be discovered on the
      bags containing the marijuana.
        3. With regard to the element of intent to deliver, that element
      may be proved by circumstantial evidence and may also be inferred
      from the amount of controlled substance possessed. An intent to
      deliver in this case could be suggested by the fact that the
      marijuana was packaged in more small plastic bags than there

were persons residing in the house, by the presence of additional plastic bags nearby, and by the evidence presented that many persons had been smoking marijuana in the house on the night of the defendant's arrest.

4. The trial court did not err in sentencing the defendant because the defendant's minimum sentence did not reflect a departure from the appropriate sentencing guidelines range. The recommended minimum sentence range initially resulting from the computation of the defendant's prior record variables and offense variables was 5 to 23 months. Because the defendant was sentenced as a subsequent drug offender, the clear language of MCL 333.7413(2) and the sentencing guidelines statute applicable to subsequent drug offenders, MCL 777.18, permitted doubling of the recommended minimum sentence range to 10 to 46 months. The minimum sentence imposed fell within this range as properly increased under the statutes.

Affirmed.

SENTENCES — CONTROLLED SUBSTANCES — SUBSEQUENT CONTROLLED SUBSTANCE OFFENDERS — SENTENCING GUIDELINES RANGE.

The subsequent controlled substance offender statute permits a sentencing court to double the recommended minimum sentence range calculated under the statutory sentencing guidelines for purposes of determining the minimum sentence authorized for a subsequent controlled substance offender (MCL 333.7413[2], 777.18).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Nancy Mullett*, Assistant Attorney General, for the people.

State Appellate Defender (by *Gail Rodwan*) for the defendant.

Before: O'CONNELL, P.J., and SAWYER and MURPHY, JJ.

MURPHY, J. Defendant was convicted, following a jury trial, of possession with intent to deliver less than five kilograms of marijuana, MCL 333.7401(2)(d)(*iii*). He was prosecuted as a repeat drug offender under MCL 333.7413(2), which provides for sentence enhancement

when a defendant has been convicted of a second or subsequent drug offense under the controlled substances act, MCL 333.7101 *et seq.* The judgment of sentence reflects that defendant was sentenced to a term of 38 to 96 months' imprisonment. Defendant appeals as of right, arguing that there was insufficient evidence to support the conviction and that the trial court erred at sentencing by doubling the minimum sentence authorized by law pursuant to MCL 333.7413(2). We affirm, holding that there was sufficient evidence to support defendant's conviction when reviewing the evidence in a light most favorable to the prosecution and that there was no sentencing error because MCL 333.7413(2) authorized the court's action in doubling the minimum sentence.

Defendant first asserts that there was insufficient evidence to support the conviction, thereby violating his due process rights. Defendant contends that the prosecution failed to establish beyond a reasonable doubt that he had possession of the marijuana and that he had an intent to deliver the marijuana, assuming possession. Defendant points to the fact that he was not the sole lessee or resident of the house where the marijuana was found, but was merely one of three lessees and one of possibly five individuals residing at the house. Moreover, more than 15 people were present when the police arrived with a warrant. Therefore, according to defendant, he did not have exclusive control over the marijuana. Furthermore, the prosecution failed to produce any evidence specifically linking him to the marijuana found in the home other than the very small amount of marijuana found in his bedroom, which could not support an inference of an intent to deliver. Thus, defendant contends that any intent to deliver had to be predicated on the larger quantity of marijuana found in the attic rafters, and defendant testified that the mari-

juana found in the attic was hidden there by someone else after the police arrived at the home. Consequently, the facts establish that someone other than defendant possessed the marijuana found in the attic. Finally, defendant argues that the prosecution's suggestion that drug paraphernalia found in the house created an inference of intent to deliver was incorrect because just the opposite would be true.

We review claims of insufficient evidence de novo. *People v Lueth,* 253 Mich App 670, 680; 660 NW2d 322 (2002). When ascertaining whether sufficient evidence was presented at trial to support a conviction, this Court must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Wolfe,* 440 Mich 508, 515-516; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses. *Id.* at 514-515. Circumstantial evidence and reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime. *People v Carines,* 460 Mich 750, 757; 597 NW2d 130 (1999). All conflicts in the evidence must be resolved in favor of the prosecution. *People v Terry,* 224 Mich App 447, 452; 569 NW2d 641 (1997).

Defendant was not denied due process because there was sufficient evidence to support the conviction. To establish that defendant committed the charged offense, the prosecution had to prove beyond a reasonable doubt that (1) defendant knowingly possessed a controlled substance, (2) defendant intended to deliver the controlled substance to someone else, (3) the substance possessed was marijuana and defendant was aware that

it was, and (4) the marijuana was in a mixture that weighed less than five kilograms. MCL 333.7401(2)(d)(*iii*); *People v Crawford*, 458 Mich 376, 389; 582 NW2d 785 (1998); see also CJI2d 12.3.

Defendant argues that he was situated similarly to the defendant in *People v Peterson*, 63 Mich App 538; 234 NW2d 692 (1975). In *Peterson*, the defendant was convicted of possession of marijuana with intent to deliver. The defendant was the lessee of a residence where 7½ ounces of marijuana were found, but a number of other rent-paying residents and guests had also stayed at the house. Most of the marijuana was located in the room of another resident and none was found in the areas over which the defendant had exclusive control. No evidence was introduced showing that the defendant knew of the marijuana's presence in the home. The *Peterson* panel further noted that there was "nothing at all to connect defendant to this marijuana." *Id.* at 546. This Court concluded that there was insufficient evidence to support the defendant's conviction of possession with intent to deliver when "the only marijuana that the jury could properly find defendant possessed" consisted of marijuana seeds that were located in a manila envelope stored in a box in which the title to the defendant's motorcycle was also located, and that were too slight in quantity to suggest an intent to deliver. *Id.* at 546-548.

The evidence presented here is clearly distinguishable from the set of circumstances confronting the *Peterson* panel. First, defendant admitted that he knew of the marijuana found in the attic, and he admitted that he had pooled his own money together with that of his roommates in order to purchase the "attic" marijuana. According to the investigating officer, defendant acknowledged that the marijuana found in the attic

might be his and that his fingerprints might be found on it. Moreover, defendant's written statement to the police indicates that all the marijuana was for him and his roommates, and the statement does not distinguish between the marijuana found in his bedroom and that found in the attic, but refers to marijuana in the aggregate.

Defendant contends that all of this can be explained away by the fact that his portion of the marijuana had been removed from the bag found in the attic, so that he did not possess what remained in it. The prosecution, however, need not rebut any and all theories that could prove a defendant innocent, but need only submit evidence sufficient to convince a reasonable jury of the existence of the elements of the crime in the face of whatever contradictory evidence the defendant provides. *People v Hardiman*, 466 Mich 417, 423-424; 646 NW2d 158 (2002). Moreover, defendant's contention goes to credibility, which was an issue to be resolved by the jury. We reiterate that circumstantial evidence and the reasonable inferences that arise from it can constitute sufficient proof of the elements of a crime beyond a reasonable doubt. *Carines, supra* at 757.

With respect to possession, it may be actual or constructive. *Wolfe, supra* at 520. Constructive possession exists if the defendant knew that the substance was present and had the right to exercise control over it. *Id.* Put differently, constructive possession exists if "the totality of the circumstances indicates a sufficient nexus between the defendant and the contraband." *Id.* at 521. Possession may be joint, with more than one individual constructively possessing the contraband, and constructive possession may be found even if the defendant is not the owner of the controlled substance. *Id.* at 520. In this case, even if defendant did not

consider himself to be the owner of the marijuana found in the attic because his portion had been removed from it, a rational jury could still find that there was a sufficient nexus between it and defendant to conclude that defendant had constructive possession of it when he admitted that he knew of its presence and that his money had gone toward its purchase. The officer's testimony relative to defendant's admission that his fingerprints might be discovered on the bags of marijuana found in the attic further supports a conclusion that defendant had control over it. Accordingly, a rational trier of fact could have reasonably concluded that defendant had constructive possession of the marijuana found in the attic.

The jury could also have rationally concluded that defendant possessed the requisite intent to deliver. An intent to deliver "may be proven by circumstantial evidence and also may be inferred from the amount of controlled substance possessed." *People v Ray*, 191 Mich App 706, 708; 479 NW2d 1 (1991). " 'Deliver' or 'delivery' means the actual, constructive, or attempted transfer from 1 person to another of a controlled substance, whether or not there is an agency relationship." MCL 333.7105(1); see also *People v Schultz*, 246 Mich App 695, 703-704; 635 NW2d 491 (2001).

Here, the marijuana found in the attic was divided in six small plastic bags. This packaging could suggest that the marijuana was intended to be transferred to others. See *Wolfe, supra* at 524-525. Moreover, the number of plastic bags into which the marijuana was separated indicates that the marijuana was intended to be transferred to more than just defendant's roommates, with whom he claimed to have purchased the marijuana. The investigating officer testified that a box of additional bags was found nearby, suggesting that someone may

have intended to break the marijuana into even smaller quantities for sale or distribution. The officer also testified that it appeared that many of those present in the home had been smoking marijuana, and defendant's statement to the police implicitly indicated that multiple persons had smoked marijuana on the night in question, further suggesting that defendant transferred marijuana to others. Thus, even assuming that the amount of marijuana found in the attic was not so great as to compel an inference of an intent to deliver, such an inference was permissible given the other circumstantial evidence presented. See *Peterson, supra* at 547-548.

Defendant maintains that much of the marijuana paraphernalia found in the house belonged to him and that this fact supports an inference that he intended only to personally use the marijuana. Again, the prosecution did not have to rebut all theories that could have proven defendant innocent. *Hardiman, supra* at 423-424. Accordingly, we conclude that, when taken together and viewed in a light most favorable to the prosecution, the evidence supported the jury's findings that defendant possessed the marijuana in the attic and intended to deliver it.

Next, defendant argues that the trial court erred in imposing sentence. He first notes that a court that departs from the statutory minimum recommended by the sentencing guidelines must articulate substantial and compelling reasons for doing so on the record. Defendant contends that the sentencing guidelines range was 5 to 23 months' imprisonment, but the court imposed a minimum sentence of 38 months' imprisonment because it was under the erroneous impression that when a defendant is sentenced as a subsequent drug offender, MCL 333.7413(2), the court has the

authority to double both the minimum and maximum, sentences and ignore the guidelines.[1]

This issue poses a question of statutory construction that we review de novo on appeal. *People v Davis*, 468 Mich 77, 79; 658 NW2d 800 (2003).

At sentencing, defendant's trial counsel argued that under the statutory sentencing guidelines, defendant's minimum sentence range would be 5 to 23 months' imprisonment, but the presentence investigation report (PSIR) had mistakenly doubled the guidelines range to 10 to 46 months' imprisonment under the incorrect assumption that because of defendant's prior drug convictions, both his maximum sentence and the guidelines range with respect to the minimum sentence would be doubled. The prosecution disagreed, arguing that if defendant's interpretation were correct, the enhancement would not effectively constitute an additional punishment. The court indicated its agreement with the prosecution that the subsequent drug offense enhancement would be meaningless if it did not also increase the minimum. The trial court then ruled as follows:

> I think, under the circumstances, that the Probation and Parole Department is correct. I—I do believe that the

---

[1] Defendant also argues that remand is necessary because the judgment of sentence indicates that he is to serve a minimum sentence of 38 months' imprisonment, yet the sentencing transcript reflects that defendant's minimum sentence was set by the trial court at 30 months' imprisonment. We find it unnecessary to remand for clarification because it is evident that the court imposed and intended to impose a minimum sentence of 38 months. In all likelihood, the sentencing transcript contains a transcription error, but even if the court stated, or misspoke, at one point during sentencing that the minimum sentence would be 30 months, the transcript also contains numerous references by the court that it was sentencing defendant consistently with the recommendation in the presentence investigation report, which recommendation was for a minimum sentence of 38 months' imprisonment.

maximum is doubled, and I believe that, as a result of that, the ... minimum can be up to doubled .... As I've indicated, I'm inclined to follow the recommendation, which I will do.

Before turning to the applicable statutory provisions, we first take heed of the governing principles of statutory construction. Our primary task in construing a statute is to discern and give effect to the intent of the Legislature. *Shinholster v Annapolis Hosp*, 471 Mich 540, 548-549; 685 NW2d 275 (2004). The words contained in a statute provide us with the most reliable evidence of the Legislature's intent. *Id.* at 549. In discerning legislative intent, this Court gives effect to every word, phrase, and clause in the statute. We must consider both the plain meaning of the critical words or phrases as well as their placement and purpose in the statutory scheme. *Id.* This Court must avoid a construction that would render any part of a statute surplusage or nugatory. *Bageris v Brandon Twp*, 264 Mich App 156, 162; 691 NW2d 459 (2004). " 'The statutory language must be read and understood in its grammatical context, unless it is clear that something different was intended.' " *Shinholster, supra* at 549 (citation omitted). If the wording or language of a statute is unambiguous, the Legislature is deemed to have intended the meaning clearly expressed, and we must enforce the statute as written. *Id.* "A necessary corollary of these principles is that a court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002). Statutory language, unambiguous on its face, may be rendered ambiguous through its interaction with and relationship to other statutes. *People v Valentin*, 457 Mich 1, 6; 577 NW2d 73 (1998). If statutes can be construed in a manner that

avoids conflict, then that construction should control the analysis. *People v Webb*, 458 Mich 265, 274; 580 NW2d 884 (1998). "We construe an act as a whole to harmonize its provisions and carry out the purpose of the Legislature." *Macomb Co Prosecutor v Murphy*, 464 Mich 149, 159-160; 627 NW2d 247 (2001).

The PSIR indicates that the sentencing guidelines range is 5 to 23 months' imprisonment after initial computation of the prior record variables and offense variables and before any enhancement under MCL 333.7413(2). The initial guidelines range of 5 to 23 months was accepted by the trial court, and the parties do not dispute the scores attributed to the various prior record variables and offense variables, the application of these scores to the pertinent grid, and the calculation of the initial minimum sentence range. Therefore, we shall accept that the minimum guidelines range before doubling was accurately calculated and proceed accordingly. The dispute arises out of whether it was appropriate to double the guidelines range and choose the minimum sentence from within that range under MCL 333.7413(2) when defendant had two prior marijuana-related convictions. We note that sentence enhancement was not sought under the general habitual-offender statutes applicable to repeat felony offenders, MCL 769.10, 769.11, 769.12, and 769.13. Rather, the prosecution specifically proceeded with the express intent to seek sentence enhancement pursuant to MCL 333.7413(2), as reflected in the warrant, complaint, and felony information.

MCL 333.7413(2) provides, in relevant part, that "an individual convicted of a second or subsequent offense under this article may be imprisoned for a term not more than twice the term otherwise authorized or fined an amount not more than twice that otherwise autho-

rized, or both." The statute in its current form has been in place since 1988. The word "term" is defined, in part, as "the time or period through which something lasts" or "a period of time to which limits have been set[.]" *Random House Webster's College Dictionary* (2001).[2] Clearly then, imprisonment for a "term" can encompass both the minimum and maximum sentences authorized by law because a period is created by reference to both. This Court, quite often, refers to a defendant's term of imprisonment by recitation of both the minimum and maximum sentences. Additionally, the clear and unambiguous language of MCL 333.7413(2) does not differentiate or suggest a distinction, either explicitly or implicitly, between maximum and minimum sentences; therefore, the word "term" can entail and contemplate both maximum and minimum sentences. MCL 333.7413(2) also speaks of doubling a term of imprisonment "otherwise authorized . . . ." There is no dispute between the parties that the maximum prescribed sentence for any given offense is considered authorized punishment for purposes of MCL 333.7413(2) and that MCL 333.7413(2) permits a court to double the statutory maximum sentence.

With respect to minimum sentences and repeat drug offenders, we note this Court's ruling in *People v Williams*, 205 Mich App 229, 230; 517 NW2d 315 (1994), which addressed a situation where the defendant was convicted of a drug crime carrying a mandatory 1- to 20-year prison term, and in which the panel stated:

> Because defendant is a repeat offender, he is subject to the sentence augmentation provision of the controlled

---

[2] "[W]e accord undefined statutory terms their plain and ordinary meanings and may consult dictionary definitions in such situations." *Griffith v State Farm Mut Automobile Ins Co*, 472 Mich 521, 526; 697 NW2d 895 (2005).

substances act, MCL 333.7413(2); MSA 14.15(7413)(2), under which he "may be imprisoned for a term no more than twice the term otherwise authorized. . . ." Thus, the sentence enhancement provision allows defendant's statutory mandatory prison term to be *raised from one to twenty years to a possible two to forty years*. [Emphasis added.]

This language clearly indicates that a sentencing court can double both the statutorily allowed maximum sentence and any statutory minimum sentence. In support, the *Williams* panel cited *People v Scott*, 197 Mich App 28, 30; 494 NW2d 765 (1992), in which this Court stated, citing MCL 333.7413(2), that "[t]he Legislature has decided to punish repeat drug offenders by doubling the *minimum* sentence otherwise authorized." (Emphasis added.) In *People v Davenport*, 205 Mich App 399, 401; 522 NW2d 339 (1994), this Court held that MCL 333.7413(2) authorized the trial court to double the defendant's minimum sentence when she was convicted of a controlled substance offense that provided for a sentence of 1 to 20 years' imprisonment. The Court concluded that "[t]he sentencing court properly sentenced defendant to two to forty years . . . ." *Id.*

At the time *Williams* was decided in 1994, the judicial sentencing guidelines were in place rather than the legislative sentencing guidelines. MCL 769.34(1) and (2); *Williams, supra* at 231. The *Williams* panel found that the sentence enhancement or augmentation provision of MCL 333.7413(2) is in the nature of and comparable to an "habitual offender" provision for purposes of the judicial sentencing guidelines, and thus the guidelines did not apply when there was sentence enhancement pursuant to MCL 333.7413(2). *Williams, supra* at 231. Indeed, the judicial sentencing guidelines did not apply to the sentencing of habitual offenders. *People v Hansford (After Remand)*, 454 Mich 320, 323; 562 NW2d 460 (1997). However, under the statutory

sentencing guidelines, habitual-offender status became relevant in setting the guidelines range. MCL 777.21(3) provides:

> If the offender is being sentenced under section 10, 11, or 12 of chapter IX [the habitual-offender statutes], determine the offense category, offense class, offense variable level, and prior record variable level based on the underlying offense. To determine the recommended minimum sentence range, increase the upper limit of the recommended minimum sentence range determined under part 6 for the underlying offense as follows:
>
> (a) If the offender is being sentenced for a second felony, 25%.
>
> (b) If the offender is being sentenced for a third felony, 50%.
>
> (c) If the offender is being sentenced for a fourth or subsequent felony, 100%.

Therefore, if a defendant is being sentenced as an habitual offender, MCL 777.21 requires an increase in the upper limit of the recommended minimum sentence range. This statutory language showed our Legislature's intent that repeat felony offenders should not only be subject to an increase in the statutory maximum sentence because of their recidivism as provided by MCL 769.10, MCL 769.11, and MCL 769.12, but their minimum sentences should likewise be increased.

With regard to drug offenses and the sentence enhancement provision of MCL 333.7413(2), MCL 777.18, which is part of chapter XVII of the Code of Criminal Procedure concerning the sentencing guidelines, expressly specifies that the statutory sentencing guidelines apply to MCL 333.7413(2) (described as "[s]ubsequent controlled substance violations"). This statutory provision, MCL 777.18, which was enacted along with the sweeping changes made by our Legislature when it

codified the sentencing guidelines in 1998 PA 317, reflects a legislative intent to implicate the sentencing guidelines when a sentence is being considered and imposed under MCL 333.7413(2). Thus, a minimum sentence for a drug offense calculated under the statutory guidelines as required by MCL 777.18 is "authorized" for purposes of enhancement under MCL 333.7413(2). There was no need to amend MCL 333.7413(2) to further this legislative intent because it had already been read by the courts as encompassing any minimum sentences authorized by law, see *Williams, supra,* and because the inclusion of authorized minimum sentences for doubling purposes, which necessarily includes a sentence imposed under the mandatory guidelines, falls within the clear language of the statute.

Furthermore, to read the doubling provision of MCL 333.7413(2) as not being applicable to a minimum sentence calculated under the guidelines would, aside from being contrary to the express language of MCL 777.18, appear to also be contrary to an overall legislative intent to increase minimum sentences for repeat offenders as demonstrated by MCL 777.21. Additionally, just as a sentence imposed for an habitual offender under the habitual-offender statutes would not be outside the sentencing guidelines range if a court sentences a defendant within a range *as increased by MCL 777.21,* so too would a court not be sentencing a defendant outside the range if the sentence is within the range *as increased by MCL 333.7413(2).* Accordingly, there would be no need for a sentencing court to articulate a substantial and compelling reason for imposing a sentence on the basis that there is a departure from the guidelines range; there is no departure. See MCL 769.34(3). Here, the minimum sentence of 38 months fell within the range as permissibly increased by MCL

333.7413(2), i.e., 10 to 46 months from the original range of 5 to 23 months.[3] Considering that the minimum sentence did not reflect a departure from the guidelines, and given that there is no claim of a scoring error or of inaccurate sentencing information being utilized by the trial court, we are mandated to affirm the sentence. MCL 769.34(10).

Affirmed.

---

[3] We emphasize that MCL 333.7413(2) does not require the sentencing court to double the range or minimum sentence, but only that a court may enhance the sentence by up to twice the term authorized by law.