*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JAMES ALLEN STINSON III,

        Defendant-Appellant.

UNPUBLISHED
November 22, 2022

No. 359191
Jackson Circuit Court
LC No. 19-000365-FH

Before: HOOD, P.J., and JANSEN and K. F. KELLY, JJ.

PER CURIAM.

Defendant, James Allen Stinson III, appeals by right his bench-trial convictions of three counts of possession of a controlled substance less than 50 grams with intent to deliver, two counts of possession of methamphetamine with intent to deliver, and third-degree fleeing and eluding a police officer. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

In January 2019, the Jackson County Sheriff's Department received a tip identifying defendant as a suspected drug dealer. After surveilling defendant traveling between two residences in Jackson Michigan, one on Union Street and the other on Jackson Street, defendant was detained and arrested during a traffic stop, and Jackson County Sheriff's Detective Samuel Sukovich secured and executed search warrants for the residences.

At the first residence on Union Street, law enforcement entered a padlocked bedroom and discovered drugs alongside defendant's personal items. These items included defendant's expired identification card, his social security card, and court paperwork with his name. The drugs confiscated by law enforcement contained 5.8 grams of heroin, 4.357 grams of methamphetamine, and 3.4 grams of crack cocaine. In addition to the fact that some of the seized drugs were packaged for distribution, law enforcement also found a scale and a packaging station with unused packaging material. At the second residence on Jackson Street, multiple items related to drug manufacturing and packaging were found, such as a bottle of narcotic additive, plastic sandwich bags with corners cut off, and a scale. However, no illegal drugs were found at the Jackson Street residence during this search.

-1-

After defendant was arrested, investigators began listening to defendant's phone calls from jail. In certain telephone calls, defendant spoke with an individual who lived at the Jackson Street residence. During these conversations, defendant referred to "his stuff" or "his sh**," and revealed that "[he] already knows that [law enforcement] didn't find the stuff" at Jackson Street, and that he "wants [the other resident] to give the sh** to some [sic], to someone else." During other phone calls, defendant identified two individuals who were suspected drug traffickers as persons who may be able to remove the "stuff" from Jackson Street.

As a result of the recordings of defendant's jail phone calls, Detective Sukovich secured and executed a second search warrant for the Jackson Street residence. During the search of a shed behind the residence, investigators discovered inside a backpack a salt shaker containing a false bottom. The secret compartment contained drugs in plastic bags, collectively amounting to 9.919 grams of heroin and 14.027 grams of methamphetamine.

Defendant was found guilty after a bench trial of three counts of delivering or manufacturing a controlled substance less than 50 grams, MCL 333.7401(2)(a)(*iv*); two counts of delivering or manufacturing a controlled substance (methamphetamine), MCL 333.7401(2)(b)(*i*); and third-degree fleeing and eluding a police officer, MCL 750.479a(3). The trial court sentenced defendant, as a fourth-offense habitual offender, MCL 769.12, to 13 to 40 years' imprisonment for each of his delivering or manufacturing a controlled substance less than 50 grams convictions, 5 to 40 years' imprisonment for each of his delivering or manufacturing a controlled substance (methamphetamine) convictions, and 4 to 15 years' imprisonment for his fleeing and eluding conviction. This appeal followed.

## II. STANDARD OF REVIEW

A challenge to the sufficiency of the evidence is reviewed de novo. *People v Montague*, 338 Mich App 29, 44; 979 NW2d 406 (2021). This Court views the evidence "in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *Id*. (quotation marks and citation omitted). "Circumstantial evidence and any reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of a crime." *People v Kenny*, 332 Mich App 394, 403; 956 NW2d 562 (2020). "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

## III. DISCUSSION

Defendant argues that the prosecutor failed to present sufficient evidence to prove beyond a reasonable doubt that defendant possessed the illegal substances found in the Union Street and Jackson Street residences. We disagree.

"To convict a defendant of possession with intent to deliver, the prosecution must prove (1) that the recovered substance is a narcotic, (2) the weight of the substance, (3) that the defendant was not authorized to possess the substance, and (4) that the defendant knowingly possessed the substance intending to deliver it." *People v McGhee*, 268 Mich App 600, 622; 709 NW2d 595 (2005).

Only the fourth element is relevant here. "The element of knowing possession with intent to deliver has two components: possession and intent." *People v Brown*, 279 Mich App 116, 136; 755 NW2d 664 (2008). The prosecutor is not required to show the defendant actually possessed the illegal substances to meet the element. *McGhee*, 268 Mich App at 622. Thus, possession can be actual or constructive. *Id.* Constructive possession, which may be sole or joint, is the right to exercise control over the substance coupled with knowledge of its presence. *People v Wolfe*, 440 Mich 508, 520; 489 NW2d 748 (1992). "Constructive possession exists when the totality of the circumstances indicates a sufficient nexus between the defendant and the controlled substance." *People v Cohen*, 294 Mich App 70, 76-77; 816 NW2d 474 (2011) (quotation marks and citation omitted). "Circumstantial evidence and the reasonable inferences that arise from the evidence can constitute satisfactory proof of possession." *Brown*, 279 Mich App at 136-137.

At the Union Street residence, defendant's personal items were discovered comingled with the drugs. These personal items included defendant's identification cards and court papers. The presence of defendant's personal items stored alongside the drugs in a padlocked bedroom is circumstantial evidence that creates a reasonable inference that defendant possessed what was stored inside the locked room, including the drugs. Indeed, during one recording of defendant's jail telephone calls, defendant referred to the Union Street residence as "our" house, which also creates a reasonable inference that defendant had possession over the contents found there. Given the totality of the circumstances, we conclude that the prosecutor presented sufficient evidence for the trial court to find that there was a sufficient nexus between defendant and the drugs found at the Union Street residence for purposes of possession. See *Cohen*, 294 Mich App at 76-77.

With respect to the drugs found at Jackson Street, defendant's statements made on the telephone while in jail similarly show circumstantial evidence that creates a reasonable inference that defendant had possession over the drugs found inside the shed. During telephone calls, he referred to the drugs as "his sh**" or "his stuff." While defendant never explicitly referred to the drugs by name, it was clear from the context of defendant's predicament and the recordings themselves that defendant was referring to illegal drugs. For example, in one recording, defendant attempted unsuccessfully to instruct the person he was speaking with—an individual who lived at the Jackson Street residence—to give "his sh**" to persons known to law enforcement to be involved with drug trafficking. Not only does the recording tend to show defendant was referring to drugs, the recording also demonstrated defendant was exercising control, though ineffectual, over the drugs. Thus, like the evidence found at the Union Street residence, the prosecutor presented sufficient evidence for the trial court to find that defendant possessed the drugs found in the shed at the Jackson Street residence.

Defendant also contends on appeal that the prosecutor failed to present sufficient evidence to prove beyond a reasonable doubt that defendant possessed the drugs with the intent to deliver. We disagree.

"Just as proof of actual possession of narcotics is not necessary to prove possession, actual delivery of narcotics is not required to prove intent to deliver." *Wolfe*, 440 Mich at 524. "[B]ecause it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind . . . ." *Kanaan*, 278 Mich App at 622. For example, intent to deliver "may be inferred from the amount of controlled substance possessed." *People v Williams*, 268 Mich App 416, 422; 707 NW2d 624

(2005). Intent to deliver may also be inferred from "the quantity of narcotics in a defendant's possession, from the way in which those narcotics are packaged, and from other circumstances surrounding the arrest." *People v Robar*, 321 Mich App 106, 126; 910 NW2d 328 (2017) (quotation marks and citation omitted).

In the padlocked bedroom at the Union Street residence, where defendant stored his personal items, law enforcement found several bags of illegal substances in amounts larger than that for personal use; amounts commonly associated with drug trafficking. Some of the bags were packaged such that there were multiple smaller bags of drugs in one larger bag. According to trial testimony, this is a packaging method commonly associated with drug trafficking. Law enforcement also found a scale and unused packaging materials at Union Street, which are items necessary to independently package drugs.

During the first search of the Jackson Street residence, law enforcement found drug manufacturing and packaging materials, but no drugs. In the interim between the first and second search, defendant unsuccessfully attempted to have a Jackson Street resident give the drugs located there to other known drug traffickers. When the second search was executed, the drugs were found in amounts commonly associated with drug trafficking. Moreover, not a single item consistent with personal use, such as a needle or pipe, was discovered at either residence. Thus, the totality of the circumstances support a reasonable inference that defendant possessed the drugs found at Jackson Street and Union Street with the intent to deliver.

Affirmed.

/s/ Noah P. Hood
/s/ Kathleen Jansen
/s/ Kirsten Frank Kelly