# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

HOUSTON HENRY CHARLTON III,

        Defendant-Appellant.

UNPUBLISHED
November 10, 2016

No. 327923
Kent Circuit Court
LC No. 14-011611-FH

Before: OWENS, P.J., and HOEKSTRA and BECKERING, JJ.

PER CURIAM.

Defendant was convicted by a jury of domestic assault, MCL 750.81(2), third offense, MCL 750.81(4). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 2.5 to 25 years' imprisonment. Defendant appeals as of right. Because the evidence was sufficient to support defendant's conviction, his evidentiary challenges are without merit, the prosecutor did not commit misconduct, and defendant was not denied the effective assistance of counsel, we affirm.

The victim in this case is defendant's on-and-off again girlfriend and the mother of his two children. In November of 2014, the victim reported to police that defendant attacked her in the bathroom of their home because defendant was angry that the victim was "getting fixed up" for work. He called her several names, "grabbed her by the shoulders, threw her against the wall, then took her head and slammed it against the wall three times." He then grabbed her throat and strangled her "to the point where she thought that she was going to lose consciousness." Afterward, he "threw" her into the bedroom and told the family he would kill them if they called the police. The police officer to whom the victim spoke observed that the victim had "scratches and marks" on her neck. When police went to the home to arrest defendant, they also found a hole in the bathroom wall at approximately the victim's head height. In addition to her report to the police, the victim made similar statements to a Children's Protective Services (CPS) worker.

However, the victim largely recanted her allegations at trial. The victim testified that there was an argument that evening about her wearing false eyelashes to work, during which defendant called her names and "used an aggressive tone." The victim testified that defendant "hit [the] wall out of anger." According to the victim's trial testimony, after defendant hit the wall, the victim was "scared" and she "thought" the argument would become "physical," but it

-1-

did not. She testified that she made a false report to the police because she wanted defendant "out of [her] house." Under MCL 768.27c, the prosecutor introduced the victim's statements to police as substantive evidence and, under MCL 768.27b, the prosecutor introduced evidence of other acts of domestic violence perpetrated by defendant on the victim. The jury also heard expert testimony on domestic violence and reasons why a victim may recant a report of abuse. The jury convicted defendant of domestic violence. Defendant now appeals as of right.

## I. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that there was insufficient evidence to support his conviction. In particular, defendant maintains that the case is entirely dependent on the victim's credibility. Defendant contends that, because the victim recanted her claim of domestic violence, her trial testimony to the effect that there was no assault must necessarily have raised a reasonable doubt and thus there was insufficient evidence to justify defendant's conviction.

This Court reviews de novo a challenge to the sufficiency of the evidence. *People v Harverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010). "We examine the evidence in a light most favorable to the prosecution, resolving all evidentiary conflicts in its favor, and determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond reasonable doubt." *People v Ericksen*, 288 Mich App 192, 196; 793 NW2d 120 (2010). "Circumstantial evidence and reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime." *People v Williams*, 268 Mich App 416, 419; 707 NW2d 624 (2005). "Further, we will not interfere with the jury's role of determining the weight of the evidence or the credibility of witnesses." *People v Ortiz*, 249 Mich App 297, 300-301; 642 NW2d 417 (2001).

To convict defendant of domestic assault, the prosecution was required to prove that defendant and the victim were associated in one of the ways set forth in MCL 750.81(2) and that defendant assaulted or assaulted and battered the victim. *People v Cameron*, 291 Mich App 599, 614; 806 NW2d 371 (2011). The term "battery" refers to "an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person." *Id.* (quotation omitted). "[T]he courts have defined an assault as an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *Id.* (quotation omitted).

In this case, the victim testified at trial that she had a dating relationship and children in common with defendant, MCL 750.81(2), and defendant does not dispute these facts. Instead, the issue on appeal is whether the evidence was sufficient to establish that defendant assaulted or assaulted and battered the victim. Relevant to this issue, the victim testified at trial that defendant called her names using "an aggressive tone" and hit a wall, leaving a hole. The victim also testified that she believed the argument would turn physical and that she was "scared."[1] The

---

[1] Even without the evidence of the victim's statements to police, the victim's trial testimony that she was "scared" and thought the altercation would turn "physical" because defendant used aggressive tones and engaged in an overt act of violence by hitting a wall could support a finding

-2-

victim's daughter and defendant's mother, who were also in the home, confirmed that there was an argument between defendant and the victim on the night in question. In addition to this trial testimony, the statements of the victim to police indicated that defendant slammed the victim's head against the wall, grabbed her by the throat, "began to strangle her," and threatened that he would kill the family if anyone called the police. If believed, this evidence plainly demonstrated the occurrence of an assault or assault and battery on the victim. Cf. *Cameron*, 291 Mich App at 615; *People v Meissner*, 294 Mich App 438, 454; 812 NW2d 37 (2011).

Although defendant argues that the victim's reports to police cannot be credited in light of her trial testimony, the issue is obviously one of credibility and we will not interfere with the jury's assessment of credibility. See *Ortiz*, 249 Mich App at 300-301. Moreover, we note that defendant's argument fails to view the evidence in a light most favorable to the prosecution and ignores evidence bolstering the credibility of the reports made to police. For example, an officer observed scratches and marks on the victim's throat, supporting the victim's report that defendant strangled her; and police found a hole in the bathroom wall at the height of the victim's head, supporting her assertion that he slammed her head into the wall. Further, the evidence showed that defendant had a history of violence against the victim, which could be reasonably seen as increasing the credibility of the victim's report of domestic violence and making it more likely that defendant once again acted with violence toward the victim. See *Cameron*, 291 Mich App at 609-612. Overall, the victim's credibility was a question for the jury and, viewing the evidence in a light most favorable to the prosecution, a rational jury could conclude that defendant assaulted and battered the victim. Therefore, the evidence was sufficient to prove that defendant committed domestic assault.

## II. EVIDENTIARY ISSUES

Next, defendant raises a variety of evidentiary issues. At trial, defendant objected only to the introduction of the statements made by the victim's daughter to CPS. Thus, that claim is preserved and is reviewable for an abuse of discretion. *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). The rest of defendant's evidentiary claims are unpreserved and are reviewed for plain error affecting defendant's substantial rights.[2] *People v Benton*, 294 Mich App 191, 202; 817 NW2d 599 (2011). To the extent defendant weaves constitutional challenges into these evidentiary arguments, those constitutional arguments are likewise unpreserved and reviewed for plain error. *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999).

---

of assault. That is, assault does not require an actual touching, but may be accomplished "where an actor engages in some form of threatening conduct designed to put another in apprehension of an immediate battery." *People v Reeves*, 458 Mich 236, 240-241; 580 NW2d 433 (1998).

[2] On appeal, defendant argues that, if there is error, he is entitled to a new trial because the effect of these purported evidentiary issues should be decided by a jury rather than this Court. Apparently, defendant would have us automatically reverse in every case where a trial error occurs regardless of whether the error affected the outcome. This argument is baseless. "Rules of automatic reversal are disfavored, for a host of obvious reasons," and, absent a rare structural error, a jury's verdict will not be set aside by an appellate court without a consideration of the effect of the error. *People v Mosko*, 441 Mich 496, 502; 495 NW2d 534 (1992); MCL 769.26.

## A. MCL 768.27b

First, defendant argues that the trial court erred by admitting testimony under MCL 768.27b because MCL 768.27b violates the separation of powers doctrine by interfering with the Supreme Court's constitutional authority to make rules governing the practice and procedures of the courts. The Michigan Supreme Court has previously considered and rejected this precise argument. *People v Mack*, 493 Mich 1, 3; 825 NW2d 541 (2012). See also *People v Schultz*, 278 Mich App 776, 779; 754 NW2d 925 (2008). Thus, defendant's separation of powers argument is without merit.

Second, defendant contends that he was denied due process because the evidence introduced under MCL 768.27b involves propensity evidence, which defendant asserts is fundamentally unfair in light of the effect that other bad acts evidence may have on a jury. However, defendant provides no authority for the proposition that due process categorically prohibits the introduction of propensity evidence, and we know of no such authority. See *Bugh v Mitchell*, 329 F3d 496, 512 (CA 6, 2003) ("There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence."). By enacting MCL 768.27b, the Legislature made a permissible policy choice to allow juries to consider other acts evidence for propensity purposes in certain cases. See *Cameron*, 291 Mich App at 609-610; *People v Pattison*, 276 Mich App 613, 620; 741 NW2d 558 (2007). To protect defendants from undue prejudice, evidence offered under MCL 768.27b remains subject to a balancing test under MRE 403. See MCL 768.27b(1). MRE 403 provides an adequate safeguard, and there is nothing fundamentally unfair about allowing propensity evidence to be introduced pursuant to MCL 768.27b. Cf. *United States v LeMay*, 260 F3d 1018, 1026 (CA 9, 2001).

Third, defendant next argues that the evidence was not admissible under MCL 768.27b because MCL 768.27b only allows for the introduction of "relevant" evidence and whether defendant committed past acts of domestic violence is irrelevant to whether he assaulted the victim in this case *unless* the evidence is used for an impermissible propensity purpose. In making this argument, defendant relies on the general prohibition on propensity evidence, he misconstrues MCL 768.27b, and he ignores binding caselaw which holds that propensity evidence is relevant and admissible under MCL 768.27b. In particular, while there is a general prohibition on using other acts evidence for propensity purposes,[3] by its express terms, in a domestic violence case, MCL 768.27b allows for the introduction of other acts of domestic violence "for *any* purpose for which it is relevant," which includes showing a defendant's "character or propensity to commit the same act." *People v Railer*, 288 Mich App 213, 220; 792 NW2d 776 (2010). Thus, contrary to defendant's arguments, propensity evidence is not irrelevant or improper under MCL 768.27b. See generally *People v Watkins*, 491 Mich 450, 470; 818 NW2d 296 (2012) ("[A] defendant's propensity to commit a crime makes it more probable that he committed the charged offense.").

---

[3] See *People v Crawford*, 458 Mich 376, 383; 582 NW2d 785 (1998).

It follows that, in the present case, the fact that defendant committed prior acts of domestic violence against the victim—including pushing her, pulling out her hair weave, and slapping her in the face—was relevant as required by MCL 768.27b.[4] The evidence was relevant to show defendant's propensity to commit an act of domestic violence against the victim, *Railer*, 288 Mich App at 219-220, it was relevant to the jury's assessment of the victim's credibility, *Cameron*, 291 Mich App at 612, and it allowed the jury to weigh defendant's behavioral history and to view the case in the larger context that defendant's background affords, *Schultz*, 278 Mich App at 779. Therefore, contrary to defendant's arguments on appeal, the evidence was relevant.

Fourth, defendant argues that the probative value of the other acts testimony was substantially outweighed by unfair prejudice, meaning that the evidence should have been excluded under MRE 403. However, in making this argument, defendant persists in the mistaken assertion that any propensity use of the evidence is improper and must weigh against admission of the evidence. In actuality, given that MCL 768.27b allows evidence to be introduced for propensity purposes in cases of domestic violence, when applying the MRE 403 balancing test in the context of MCL 768.27b, "courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudice effect." *Watkins,* 491 Mich at 487. Weighing the evidence's propensity inference in favor of admission, it is plain that MRE 403 did not require exclusion of the contested evidence. Although the other acts evidence was damaging, it was not particularly graphic or inflammatory, and it did not interfere with the jury's ability to logically weigh the evidence. Cf. *Railer*, 288 Mich App at 220-221. Overall, the trial court did not abuse its discretion when it allowed the prosecutor to introduce evidence of defendant's prior bad acts.

## B. MCL 768.27c

Next, defendant argues that the he was denied his right to a fair trial because the victim's statements to police and CPS were inadmissible under MCL 768.27c.[5] Specifically, defendant contends that the statements were inadmissible under MCL 768.27c because: (1) the statement to police was not made close in time to the alleged assault, (2) the statement to the CPS worker was not made to a "law enforcement officer," (3) and the statements to police were not made under circumstances indicative of trustworthiness.

---

[4] Defendant was charged with an offense involving domestic violence as defined by MCL 768.27b. The victim falls into the category of "family or household member" because she had a dating relationship with defendant and a child in common. MCL 768.27b(5)(b). The prior acts presented by the prosecution at trial occurred within the past 10 years and qualify as acts of domestic violence. Therefore, MCL 768.27b applies to this case.

[5] In passing, defendant asserts that the separation of powers arguments he identified with respect to MCL 768.27b apply equally to MCL 768.27c, such that the statute is an improperly enacted means of changing a rule of evidence. These arguments are without merit for the same basic reasons discussed *supra* in relation to MCL 768.27b. See generally *Meissner*, 294 Mich App at 445 ("Our Legislature enacted MCL 768.27c as a substantive rule of evidence reflecting specific policy concerns about hearsay in domestic violence cases.").

Under MCL 768.27c, evidence of a statement by a declarant is admissible if:

(a) The statement purports to narrate, describe, or explain the infliction or threat of physical injury upon the declarant.

(b) The action in which the evidence is offered under this section is an offense involving domestic violence.

(c) The statement was made at or near the time of the infliction or threat of physical injury. . . .

(d) The statement was made under circumstances that would indicate the statement's trustworthiness.

(e) The statement was made to a law enforcement officer.

MCL 768.27c(2) provides that circumstances relevant to the issue of trustworthiness may include, but are not limited to:

(a) Whether the statement was made in contemplation of pending or anticipated litigation in which the declarant was interested.

(b) Whether the declarant has a bias or motive for fabricating the statement, and the extent of any bias or motive.

(c) Whether the statement is corroborated by evidence other than statements that are admissible only under this section.

Here, the trial court did not err by admitting the statements. The incident occurred at approximately 8:30 p.m. on the evening of November 17, 2014 and the victim made her statement to police, i.e., "a law enforcement officer," at about 2:00 a.m. on November 19.[6] This was near in time to the infliction of physical injury as required to fulfill the temporal requirement of MCL 768.27c(1)(c). See *Meissner*, 294 Mich App at 448-449; see also *People v Quitiquit*, 155 Cal App 4th 1, 9; 65 Cal Rptr 3d 674 (2007). The statement was also made under circumstances that would indicate the statement's trustworthiness. The victim's statements were corroborated by other evidence, including the marks on her person, her daughter's statement to police,[7] and the hole in the bathroom wall. Further, the police described the victim's demeanor as upset when she made her report, and there is nothing on the record to suggest that the victim

---

[6] The victim actually called the police closer in time to the incident, but was told to come in person to make a full report and she went to the police as soon as she was able.

[7] Even if the child's statements to police that defendant slammed her mother against the wall was not admissible as substantive evidence at trial because the child was not the victim of the assault, see MCL 768.27c(1)(a), the child's corroborating statements could be considered incident to a preliminary evidentiary ruling by the trial court. See MRE 104(a).

made the statement to the police in anticipation of litigation. Cf. *Meissner*, 294 Mich App at 449-450. It is true that the victim testified that she fabricated her report to police because she wanted defendant out of her house, which provides some evidence of a motive to lie. However, it is not necessary that all three factors under MCL 768.27c(2) support a finding of trustworthiness. See *Meissner*, 294 Mich App at 449. Overall, considering all the circumstances, the trial court did not err by finding that the statement to police was trustworthy and thus it was admissible under MCL 768.27c.[8] Defendant has failed to demonstrate plain error affecting his substantial rights. *Carines*, 460 Mich at 763.

In terms of the victim's statement to CPS, defendant argues that the victim's statement was inadmissible under MCL 768.27c because the CPS worker was not "law enforcement" as required by the statute. First, the record does not state whether the statement was admitted under MCL 768.27c as substantive evidence or under MRE 613 for impeachment purposes, meaning that we cannot determine whether plain error occurred. Nevertheless, even if the trial court erroneously admitted the victim's statement to CPS under MCL 768.27c, defendant has failed to establish that he was prejudiced by the error. The CPS worker offered similar testimony to that given by the police, and, on the facts of this case, we fail to see how defendant was prejudiced by the admission of this cumulative evidence. See *People v Rodriquez*, 216 Mich App 329, 332; 549 NW2d 359 (1996). Defendant has not shown plain error. *Carines*, 460 Mich at 763.

## C. HEARSAY

Defendant also argues that the victim's daughter's prior inconsistent statements were inadmissible hearsay that could not be used for impeachment purposes. At trial, the child testified that on the night in question she was asleep, she heard arguing, and then her mother woke her up. She testified that she "forgot" what she saw after she woke up and that she remembered "nothing." The child also said that she did not remember telling police or CPS that defendant hit the victim's head into a wall. Consequently, the trial court admitted evidence that the victim made prior statements to authorities for impeachment purposes. See MRE 607; MRE 613; *People v Jenkins*, 450 Mich 249, 256; 537 NW2d 828 (1995) ("When a witness claims not to remember making a prior inconsistent statement, he may be impeached by extrinsic evidence of that statement.").

Defendant now argues this decision was erroneous because, even if the impeachment evidence demonstrates that the child lied about whether she made past statements, this fact alone would not help the prosecutor's case and the prosecutor's true aim was to elicit a denial from the child as a means of placing her damaging past statements before the jury. See *People v Stanaway*, 446 Mich 643, 693; 521 NW2d 557 (1994). In this respect, "[a] prosecutor cannot use

---

[8] Defendant also argues that the trial court made an improper statement to the jury to the effect that the victim's prior statement to the police was "reliable." Considering the trial court's instruction on this point as a whole, the trial court plainly and accurately instructed the jury that they did not have to accept the victim's statement to police. We can discern no error in the trial court's remarks that would entitle defendant to relief. See *People v Aldrich*, 246 Mich App 101, 124-125; 631 NW2d 67 (2001).

a statement that directly tends to inculpate the defendant under the guise of impeachment when there is no other testimony from the witness for which his credibility is relevant to the case." *People v Kilbourn*, 454 Mich 677, 682; 563 NW2d 669 (1997). However, this rule does not apply in this case because the child's testimony regarding the events in the home that evening was inconsistent with that of other witnesses at trial. Cf. *id.* For example, defendant's mother stated that the child was downstairs with her that evening and the victim indicated that the child came to the bathroom at one point to tell her that dinner was ready. Given these various statements regarding the child's whereabouts that evening, her location was an issue at trial and the child's credibility with respect to her assertion that she was "asleep" was relevant. Thus, the trial court did not abuse its discretion by admitting evidence of her prior inconsistent statements for impeachment purposes.[9] See *id.* at 683-684.

## D. EXPERT TESTIMONY

Defendant next argues that the prosecution's domestic violence expert improperly expressed an opinion on whether the victim was lying to protect defendant. An expert may not vouch for the veracity of a victim. *People v Musser*, 494 Mich 337, 349; 835 NW2d 319 (2013); *People v Dobek*, 274 Mich App 58, 71; 732 NW2d 546 (2007). However, expert testimony on patterns of domestic violence may be admissible and useful "when a complainant endures prolonged toleration of physical abuse and then attempts to hide or minimize the effect of the abuse, delays reporting the abuse to authorities or friends, or denies or recants the claim of abuse." *People v Christel*, 449 Mich 578, 592; 537 NW2d 194 (1995).

Here, the expert testified that it was common for a victim to recant previous claims of abuse and, in response to a line of inquiry initiated by defense counsel regarding whether victims ever "lie," the expert indicated that she had been personally involved in only one case where she had reason to believe that the victim was lying. While the expert offered these general observations about domestic violence and her experience with victims, she did not testify that the victim in this case was telling the truth. In fact, the expert specifically testified that she had never talked to, or worked with, the victim. Thus, there is nothing to support that the expert improperly commented on the victim's veracity, and defendant has not shown plain error.

## III. PROSECUTORIAL MISCONDUCT

Defendant next argues that several of the prosecutor's comments constituted prosecutorial misconduct. Unpreserved claims of prosecutorial misconduct, such as defendant's claims in this case, are reviewed for plain error affecting substantial rights.[10] *People v Brown*,

---

[9] Moreover, although the prosecutor offered the statements for impeachment purposes, to the extent the child told police that defendant threatened the "family" by telling them he would kill "them" if police came, these threats of violence against the child would potentially be admissible under MCL 768.27c(1)(a).

[10] Defendant disputes the applicability of any standard of review that does not result in automatic reversal of his conviction if there is a finding of prosecutorial misconduct. As we have noted, "[r]ules of automatic reversal are disfavored, for a host of obvious reasons." *Mosko*, 441 Mich at

279 Mich App 116, 134; 755 NW2d 664 (2008). "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003). "Further, we cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *Id.* at 329-330.

Prosecutorial misconduct claims are decided on a case-by-case basis, and challenged remarks must be read in context. *People v McElhaney*, 215 Mich App 269, 283; 545 NW2d 18 (1996). "Prosecutors are typically afforded great latitude regarding their arguments and conduct at trial." *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272, 293 (2008). "They are generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Id.* However, a prosecutor may not express a personal opinion regarding defendant's guilt or denigrate defendant with intemperate remarks. *People v Bahoda*, 448 Mich 261, 282–283; 531 NW2d 659 (1995). A prosecutor also may not argue facts not in evidence. *Stanaway*, 446 Mich at 686. Likewise, "[a] prosecutor's clear misstatement of the law that remains uncorrected may deprive a defendant of a fair trial." *People v Grayer*, 252 Mich App 349, 357; 651 NW2d 818 (2002). "However, if the jury is correctly instructed on the law, an erroneous legal argument made by the prosecutor can potentially be cured." *Id.*

Defendant first asserts that the prosecutor committed misconduct by misstating the law during closing arguments when she told the jury that the law considers prior statements made by a victim of domestic violence to be "credible." More fully, the prosecutor stated:

> What is interesting, and the Judge instructed you at the point when [the officer] was going to testify about her statements, is that what are the circumstances or the criteria that those statements are admissible for you to consider, and the Judge will instruct you that you can consider those as evidence of whether or not these crimes were committed. The statement has to be made to law enforcement, and then the other component is the statement has to be regarding an allegation of domestic violence.

> So ask yourself this: Why does the law allow those, and why does the law consider those to be credible statements for you as jurors to decide? Ask yourself that. And I think the answer is pretty clear. Because you got an insight when you heard [the expert] testify yesterday what this involves, what these types of crimes involve and what these type of consistent and constant actions toward victims of domestic violence have to deal with and what their very common responses are.

> \*\*\*

> [The victim's] response and what she did here and what she did at the prelim is so typical. It is so common and consistent to the point that the law

---

502. And, more particularly, it is well-settled that claims of prosecutorial misconduct are amendable to plain error review. *Brown*, 279 Mich App at 134.

recognizes and says you can find credible, you can rely on a statement to the police about a crime of domestic violence . . . .

Viewing the comments as a whole, we find that the prosecutor's remarks were perhaps poorly worded and imprecise, but not a clear misstatement of the law. Cf. *People v Abraham*, 256 Mich App 265, 276; 662 NW2d 836 (2003). That is, pursuant to MCL 768.27c, statements made under circumstances indicative of the "statement's trustworthiness" may be admitted as substantive evidence. However, while such statements are admissible, whether the statement should be believed is ultimately an issue for the jury and there is certainly no presumption that the statements are "credible." Consequently, it would be improper for the prosecutor to indicate that the jury must believe the prior statements or to inform the jury there is some presumption of believability. But, in this case, while the prosecutor discussed the "credibility" of the statements, the prosecutor stopped short of suggesting the jury was *required* to believe the statements or that the law created a presumption that the statements were credible. To the contrary, while discussing the credibility of the statements, the prosecutor noted the statements were "admissible for [the jury] to *consider*," for the jury to "*decide*," and that the jury "*can* find" the statements credible. In other words, on the whole, the prosecutor's remarks do convey the fact that the jury was to assess the credibility of the past statements in light of the circumstances in which they were made. Indeed, elsewhere, the prosecutor repeatedly asked the jury to decide whether it believed the victim's testimony or her statement to police.[11] Thus, considered as a whole, the prosecutor's remarks did not deprive defendant of a fair trial. *Grayer*, 252 Mich App at 357. Additionally, the trial court instructed the jury that the lawyer's arguments were not evidence and, when the court admitted the victim's past statements, it specifically instructed the jury that they could decide whether or not to believe the victim's statements to police. Jurors are presumed to follow their instructions, and defendant is not entitled to relief under a plain error standard of review. See *Callon*, 256 Mich App at 329.

Defendant's other claims of prosecutorial misconduct are also without merit. Defendant contends that the prosecutor argued facts not in evidence when she argued that it was tempting to "judge" the victim for wanting to stay with defendant, that the victim recanted because she needed him to help raise the children and because she had an exaggerated idea of what defendant's punishment would be, and that the situation was sad because the children observed

---

[11] Defendant suggests that the prosecutor shifted the burden of proof by asking the jury to decide which statement it believed and expressed a personal opinion of the victim's credibility by urging them to believe the victim's statements to police, in part because the victim's conduct fit the pattern described the domestic violence expert. These arguments are without merit. There was nothing improper in the prosecutor's framing of the principal issue in this case as a contest between the victim's past statements and her trial testimony, and the prosecutor was free to comment on witness credibility and to argue that the victim's statement to police was more credible in light of the corroborating evidence. See *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004). In any event, the trial court instructed the jury on the burden of proof, the presumption of innocence, and the assessment of witness credibility, alleviating any prejudicial effect. See *Callon*, 256 Mich App at 329.

domestic violence. Contrary to defendant's arguments, the record supports that the prosecutor's comments were based on evidence presented during trial and reasonable inferences arising therefrom. For example, the evidence showed that the victim previously continued a relationship with defendant after other acts of domestic violence, that defendant "helps out a lot" with the kids, that defendant sometimes helped with rent and food bills, that the victim did not want defendant to face "consequences" in this case, that the children were in the home when the assault occurred and that the victim spoke to authorities partly because she did not want the children to "witness [defendant's] anger." Thus, the arguments were proper.

Defendant also argues that the prosecutor expressed a personal belief in defendant's guilt when she stated in her opening statement that defendant hit the victim, pushed her head into a wall, and strangled her. The prosecution's opening statement "is the appropriate time to state the facts that will be proved at trial." *Ericksen*, 288 Mich App at 200. Thus, it was not improper for the prosecutor to set out the facts of the case that she intended to prove. *Id*. Defendant also argues that the prosecutor denigrated defendant and the defense by telling the jury that the victim's trial testimony was a "charade." But, a prosecutor may argue from the facts and testimony regarding whether witnesses are credible or worthy of belief, and prosecutors "need not confine argument to the blandest possible terms." *Dobek*, 274 Mich App at 66. Here, the prosecutor's comment regarding the strength and credibility of the evidence was not an improper denigration of the defense. Cf. *id* at 67.

Furthermore, even assuming some merit to any of defendant's claims of prosecutorial misconduct, defendant has not established that it affected his substantial rights. First, any prejudice caused by these remarks could have been alleviated by timely objections and requests for curative instructions. *Unger*, 278 Mich App at 235. Second, any prejudice was in fact alleviated by the trial court's instructions. Therefore, there was no plain error affecting defendant's substantial rights, and reversal is not warranted.[12] *Id.*

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, defendant argues that he was denied the effective assistance of counsel when his trial counsel failed to object to the unpreserved evidentiary issues and prosecutorial statements that defendant now challenges on appeal. To establish the ineffective assistance of counsel, a defendant must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015). In this case, defendant's claim fails because has not shown that any evidence was improperly admitted at trial or that the prosecutor's comments were improper. Consequently, objection by counsel would have been futile, and "[f]ailing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel."

---

[12] Insofar as defendant suggests that the cumulative effect of the prosecutor's errors merits reversal, this argument fails because defendant has not shown error and, without error, there can be no cumulative effect. *Dobek*, 274 Mich App at 106.

*Ericksen*, 288 Mich App at 201. Thus, he has not established his ineffective assistance of counsel claim. See *id*.; *Putman*, 309 Mich App at 248.

Affirmed.


/s/ Donald S. Owens
/s/ Joel P. Hoekstra
/s/ Jane M. Beckering