# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

BERNARD PETERSON,

       Defendant-Appellant.

UNPUBLISHED
May 8, 2018

No. 335251
Wayne Circuit Court
LC No. 15-008364-01-FC

Before: BORRELLO, P.J., and SAWYER and JANSEN, JJ.

PER CURIAM.

Defendant appeals as of right his convictions of two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b, and one count of kidnapping, MCL 750.349. The trial court sentenced defendant to 60 to 90 years' imprisonment each conviction, to be served concurrently. We affirm.

Defendant was convicted of kidnapping and sexually assaulting a female victim in January 1999. The victim had left her Detroit home early in the morning to walk a short distance to make a telephone call. As she was returning to her home, she was confronted by an armed gunman, who took her money and a ring. The man then took the victim to a nearby abandoned garage and sexually assaulted her. The victim did not know her assailant. After the assault, the victim contacted the police and then was examined at a hospital where a sexual assault kit was prepared. The sexual assault kit was turned over to the Detroit police where it remained stored with the Property Control division for several years without being tested. In 2013, after funding became available to test a backlog of sexual assault kits held by the department, the victim's sexual assault kit was sent to a private laboratory for testing. The results of DNA testing were entered into a national database, which led to profile matches with additional unsolved cases and a match to defendant's known DNA profile. An additional sample of defendant's DNA was obtained pursuant to a search warrant, and testing of that sample confirmed the match with the DNA sample collected in the victim's case. At trial, the prosecution presented evidence relating to the kidnapping and sexual assault of the victim, as well as evidence linking defendant to sexual assaults of other female victims in the same general timeframe and area of the city, under similar circumstances.

# I. DENIAL OF DIRECTED VERDICT

Defendant first argues on appeal that the trial court erred in denying his motion for a directed verdict at trial. We disagree.

When reviewing the denial of a motion for a directed verdict, we must review the evidence de novo, viewing it in a light most favorable to the prosecution, to determine whether a rational trier of fact could have found that the essential elements of the charged crimes were proved beyond a reasonable doubt. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006); *People v Schaw,* 288 Mich App 231, 233; 791 NW2d 743 (2010). Circumstantial evidence and any reasonable inferences arising from the evidence may be sufficient to prove the elements of a crime. *People v Abraham,* 234 Mich App 640, 656; 599 NW2d 736 (1999). "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v John Williams, Jr,* 268 Mich App 416, 419; 707 NW2d 624 (2005). All evidentiary conflicts will be resolved in favor of the prosecution. *Id*.

Defendant does not dispute that sufficient evidence was presented to prove the elements of both CSC-I and kidnapping. Rather, defendant argues that the evidence was insufficient to establish his identity as the person who committed these crimes. Although defendant acknowledges that DNA evidence linked him to the kidnapping and sexual assault of the victim, he argues that problems with the chain of custody for the physical evidence rendered the test results insufficient to prove his identity as the person who kidnapped and sexually assaulted the victim. The trial court rejected this argument below because the prosecution had presented several witnesses who offered testimony describing the procedures for collecting, handling, storing, and eventually transporting the evidence for testing, as well as the procedures for documenting each of these steps. Specifically, the court found that

> they have connected it to your client through all these witnesses that came up here in terms of where it was — the hospital collected it, it then went to the Detroit Police Department. The lady came in and said where she shipped it to, and then it was shipped — or the data was shipped to the police department — I mean, to the Michigan State Police and ultimately ended up with the DNA.

Accordingly, the trial court denied defendant's motion for a directed verdict.

Identity is an essential element of every offense. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). The credibility of identification testimony is a question for the trier of fact to resolve and this Court will not resolve the issue anew. *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013); *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). In this case, testimony was presented describing the victim's sexual assault examination, the procedure for collecting samples during that examination, and the procedure for preserving the evidence in a sexual assault kit. Testimony was also presented describing the process for transporting that evidence to the Detroit Police Department and storing it with the Property Control division. In addition, witnesses testified regarding the procedure for later transporting the sexual assault kits to a private laboratory for testing, and the private laboratory's procedures for handling and documenting the chain of custody of the evidence at its facility. Defendant stipulated to the admission of a chain-of-custody form relating to the handling of the victim's

sexual assault kit at Sorenson Forensics, the private laboratory that processed the sexual assault kit in this case. Through this evidence, the prosecution satisfied the requirement of authentication as a condition precedent to the admissibility of the DNA evidence by showing to a reasonable degree of certainty that the samples tested at the laboratory were samples collected from the victim during her sexual assault examination. MRE 901(a). *People v White*, 208 Mich App 126, 130-131; 527 NW2d 34 (1994). To the extent defendant attempts to identify problems with the chain of custody of the evidence, "any deficiency in the chain of custody goes to the weight of the evidence rather than its admissibility[.]" *Id.* Issues involving the weight and credibility of evidence must be resolved in favor of the prosecution when analyzing the sufficiency of the evidence. *Williams, Jr,* 268 Mich App at 419.

Defendant further suggested at trial that the test results could not be trusted because of the possibility of improper tampering or contamination of the physical evidence, or because of degradation while the evidence was in storage. However, no evidence of any actual tampering or contamination was presented, and witnesses testified that the length of time the evidence was in storage did not affect its ability to be reliably tested. Accordingly, the DNA test results were sufficient to establish defendant's identity as the person who kidnapped and sexually assaulted the victim. Therefore, the trial court properly denied defendant's motion for a directed verdict.

## II. PROSECUTORIAL MISCONDUCT

Second, defendant argues that he is entitled to a new trial because of the prosecutor's conduct in offering inadmissible testimony and making improper closing arguments. We disagree.

The record discloses that defendant did not object to any of the prosecutor's conduct that he now challenges on appeal. Accordingly, defendant's claims of misconduct are unpreserved and our review of those claims is limited to plain error affecting defendant's substantial rights. *People v Abraham,* 256 Mich App 265, 274; 662 NW2d 836 (2003). An error is plain if it is clear or obvious, and an error affects substantial rights if it is prejudicial, i.e., if it affects the outcome of the proceedings. *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003). If the prejudicial effect of any improper comment could have been cured by a timely instruction from the trial court, reversal is not required. *People v Williams,* 265 Mich App 68, 70-71; 692 NW2d 722 (2005), aff'd 475 Mich 101 (2006).

Claims of prosecutorial misconduct are decided case by case and challenged comments must be read in context. *People v McElhaney*, 215 Mich App 269, 283; 545 NW2d 18 (1996). The test for prosecutorial misconduct is whether the defendant was denied a fair trial. *People v Bahoda*, 448 Mich 261, 266-267; 531 NW2d 659 (1995). A prosecutor is afforded great latitude during closing argument. The prosecutor is permitted to argue the evidence and reasonable inferences arising from the evidence in support of her theory of the case. *Id*. at 282. Although a prosecutor must refrain from making prejudicial remarks, *id*. at 283, a prosecutor may use "hard language" when the evidence supports it and she is not required to phrase her arguments in the blandest of terms. *People v Ullah*, 216 Mich App 669, 678; 550 NW2d 568 (1996). However, a prosecutor may not make a statement of fact that is unsupported by evidence. *People v Ackerman,* 257 Mich App 434, 450; 669 NW2d 818 (2003).

Contrary to defendant's assertion, the record does not support his contention that the prosecutor violated a trial court ruling by asking the victim and other witnesses about their reasons for testifying and then later commenting on that testimony. When the victim was testifying, the prosecutor asked her if she agreed to participate in an investigation. The trial court overruled a defense objection that this question was leading or improperly assumed facts not in evidence. In response to further questioning, the victim testified that no one was forcing her to testify and that she was doing so voluntarily. There were no objections to this testimony. Defendant has not identified any ruling by the trial court sustaining an objection or otherwise prohibiting the prosecutor's line of questioning. Other witnesses also were permitted to testify that they were appearing voluntarily, explaining that their purpose was to obtain justice. The prosecutor was not restricted in eliciting this testimony. In closing argument, the prosecutor commented, consistent with the witnesses' testimony, that the witnesses were testifying to seek justice.

The prosecutor was allowed to offer evidence about why the witnesses were testifying, and the prosecutor commented on the credibility of that testimony. A prosecutor is permitted to comment on the evidence and reasonable inferences arising from the evidence. *Bahoda*, 448 Mich at 282. A prosecutor is also free to argue from the facts and testimony that a witness is credible or worthy of belief. *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007). Therefore, the prosecutor's questions and arguments were proper.

Defendant also argues that the prosecutor improperly referred to a map showing the locations of the sexual assaults against the victim and other witnesses. Defendant further represents that the prosecutor referred to the location shown on the map as defendant's "hunting grounds." Defendant complains that the map improperly included a marker denoting the location of defendant's home when no such evidence was presented at trial. He also complains that the map included the location of a sexual assault against an additional victim, LH, who was not the subject of any testimony at trial.

With respect to the map's inclusion of a sexual assault against LH, if defendant had raised a timely objection to the map itself, LH's name could have been removed from the map. Regardless, defendant was not charged with any crime against LH, and he does not dispute that no evidence was presented at trial regarding any offense involving LH, and that the prosecutor never referred to LH as an additional victim in closing argument or otherwise. Under these circumstances, the possible inclusion of her name on the exhibit used at trial was not likely to affect the outcome of the proceeding. Accordingly, defendant's substantial rights were not affected.

With respect to the fact that the map exhibit contained a label identifying the location of defendant's home in 1997, defense counsel addressed the map in closing argument and argued that there was no evidence that defendant was living in that area or that he was even living in Michigan during the relevant time periods. Counsel did not otherwise dispute that all of the women were sexually assaulted in the same general area. Because DNA evidence linked defendant to those assaults, it was not improper for the prosecutor to refer to that area as defendant's "hunting grounds," regardless of where defendant actually lived. And to the extent that the evidence did not show that defendant was living in that area during the relevant time periods, defendant's substantial rights were protected by defense counsel's argument

highlighting that there was no evidence introduced at trial that defendant was living in that area, and by the trial court's instructions regarding the jury's consideration of evidence. Specifically, the trial court instructed the jury that it could "consider [only] the evidence that has been properly admitted in this case," and that "[e]vidence includes only the sworn testimony of the witnesses admitted into evidence and anything else I told you to consider such as the stipulations." The trial court further instructed the jury that "[t]he lawyers' statements and arguments and any commentaries are not evidence," and "[y]ou should only accept the things the lawyers say that are supported by the evidence."

Defendant also complains that the prosecutor made improper comments during her rebuttal argument that evoked sympathy for the victim and the other acts witnesses, and suggested to the jury that the victim's morals were above reproach. We disagree. The remarks were not calculated to evoke sympathy for the victim or other witnesses, and they were responsive to defense counsel's closing argument. In his closing argument, defense counsel repeatedly attacked the motives of the police and the prosecutor's office, repeatedly accusing them of trying to deceive and mislead the jury. A prosecutor's comments must be considered in light of defense counsel's comments. *People v Watson*, 245 Mich App 572, 593; 629 NW2d 411 (2001). It was fair for the prosecutor to respond to defense counsel's arguments by refuting any possible claim that defendant's prosecution was somehow the product of an intentional effort to fabricate or alter the evidence. Indeed, the prosecutor asked the jury to examine the evidence and decide if it thought "we've tried to hide something from you, we've tried to pull the wool over your eyes." Viewed in context, the prosecutor's arguments were proper. Moreover, to the extent that the remarks could be considered improper, any perceived prejudice could have been cured by a timely objection and cautionary instruction. Therefore, reversal is not required. *Williams*, 265 Mich App at 70-71.

### III. SENTENCING

Finally, defendant argues that his sentences are excessive and disproportionate. We disagree.

In *People v Lockridge*, 498 Mich 358, 364-365, 391-392, 399; 870 NW2d 502 (2015), our Supreme Court held that Michigan's sentencing guidelines are constitutionally deficient, in violation of the Sixth Amendment, to the extent that they "require judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range . . ." *Id.* at 364. To remedy this deficiency, the Court held that the guidelines are advisory only. *Id.* at 365. Under *Lockridge*, however, trial courts are still required to "continue to consult the applicable guidelines range and take it into account when imposing a sentence." *Id.* at 392.

In this case, the parties agreed at sentencing that defendant was a fourth-offense habitual offender, MCL 769.12, which subjected him to an enhanced sentencing guidelines range of 270 to 900 months' imprisonment, or life. The trial court sentenced defendant within that range by imposing minimum sentences of 60 years (720 months). As such, this Court's review is limited by MCL 769.34(10), which provides that "[i]f a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied

upon in determining the defendant's sentence." In *People v Schrauben*, 314 Mich App 181, 196 n 10; 886 NW2d 173 (2016), this Court held that "*Lockridge* did not alter or diminish MCL 769.34(10)." Thus, "[w]hen a trial court does not depart from the recommended minimum sentence range, the minimum sentence must be affirmed unless there was an error in scoring or the trial court relied on inaccurate information." *Schrauben*, 314 Mich App at 196. Accord *People v Jackson*, 320 Mich App 514, 527; ___ NW2d ___ (2017), lv pending (a sentence within the appropriate guidelines range "is presumptively proportionate and must be affirmed"). Because defendant's sentences are within the guidelines range and he has not identified a scoring error or inaccurate information that the trial court relied on when imposing sentence, his sentences must be affirmed. *Schrauben*, 314 Mich App at 196.

Affirmed.

/s/ Stephen L. Borrello
/s/ David H. Sawyer
/s/ Kathleen Jansen