*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ELRAY CHEVEZ BAKER,

        Defendant-Appellant.

UNPUBLISHED
April 18, 2019

No. 342109
Genesee Circuit Court
LC No. 16-040281-FC

Before: LETICA, P.J., and RONAYNE KRAUSE and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of first-degree felony murder, MCL 750.316(1)(b), larceny of $200 or more but less than $1,000, MCL 750.356(4)(a), felon in possession of a firearm, ML 750.224f, and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, to life imprisonment without parole for the felony-murder conviction, 5 to 10 years in prison for the felon-in-possession conviction, and 365 days for the larceny conviction, to be served concurrently, but consecutive to concurrent two-year terms of imprisonment for the felony-firearm convictions. We affirm.

## I. BACKGROUND

Defendant's convictions arise from a home invasion of an occupied dwelling during the early morning hours of June 8, 2011, in the city of Flint, during which Pedro Martinez, one of the occupants of the house, was shot. According to other occupants in the house, two intruders were involved in the offense, one of whom was armed with a gun. The gunman initially confronted Pedro's daughter, Elisa Gaona, and her husband Pablo in their bedroom. According to Elisa, the gunman repeatedly tried to turn on a bedroom light for a table lamp by flicking a wall switch 5 to 10 times, but was unsuccessful. Elisa eventually turned on the light using a switch on the lamp. While the gunman was in the bedroom with Elisa and Pablo, Pedro momentarily appeared outside the bedroom door and then retreated. The gunman instructed his accomplice to look for Pedro. After the accomplice announced, "He's got a gun," both intruders ran out of the bedroom and gunshots were fired. The two intruders escaped, but Pedro was shot in the thigh. Pedro died

-1-

five days later due to complications from the gunshot wound. The intruders took Elisa's purse, Pablo's wallet, and a set of keys. The police obtained a DNA sample from the light switch in the bedroom. A week or two after the offense, Elisa received her driver's license, which had been in her purse, in the mail. None of the items of value that were taken were ever returned.

During the summer of 2011, defendant was implicated in a series of other home invasions and robberies in Flint. He was charged in several of those cases, which were resolved in 2012 by a plea agreement whereby defendant pleaded guilty to three counts of armed robbery and one count of felony firearm, and agreed to a minimum prison sentence of 17 years for armed robbery and two years for felony-firearm. In exchange, the prosecution agreed to dismiss other specified cases and complaints, and also that defendant "shall not be prosecuted for any other HI's/A.R. during summer 2011 investigated by FPD." It is not disputed that "HI" refers to home invasions, "A.R." refers to armed robberies, and "FPD" is the Flint Police Department. At the plea hearing, the prosecutor stated that "this conviction will wrap up the Defendant's crime spree . . . during the summer of 2011," and defendant's attorney agreed that "this wraps up any and all similar type conduct . . . during the events of the summer of 2011." In taking defendant's plea, the trial court asked defendant,

> And, as has already been made reference [sic] to, your alleged crime spree during the summer of 2011, the incidents arising out of that time frame, also will not be charged; do you understand that, sir?

Defendant stated that he understood. After making a finding that defendant's plea freely and voluntarily made, the trial court sentenced defendant accordingly.

In 2016, the police connected defendant to the instant case through a DNA match to the light switch sample collected in 2011. Defendant was charged with first-degree felony murder, first-degree home invasion, armed robbery, felon in possession of a firearm, and two counts of felony-firearm. Defendant moved to dismiss the charges, arguing that they were precluded by the 2012 plea agreement. After conducting an evidentiary hearing, the trial court determined that the plea agreement only barred the prosecution from charging defendant with home invasion and armed robbery. The court dismissed those two charges, but allowed the remaining charges to remain.[1] The prosecution then moved to amend the information to add a charge of larceny of $200 or more but less than $1,000, to serve as a predicate felony for felony-murder. The trial court granted that motion. At trial, the prosecution presented evidence that the DNA from the light switch sample matched defendant's DNA profile. In addition, Elisa identified defendant as the gunman who confronted her inside her house in June 2011. A jury convicted defendant of felony murder, larceny of $200 or more but less than $1,000, felon in possession of a firearm, and two counts of felony-firearm.

---

[1] The prosecution filed an interlocutory application for leave to appeal the trial court's order dismissing the home invasion and robbery charges. This Court denied the application. *People v Baker*, unpublished order of the Court of Appeals, entered March 29, 2017 (Docket No. 337149), lv den 500 Mich 967 (2017).

## II. 2012 PLEA AGREEMENT

Defendant first argues that the trial court erred by failing to dismiss all of his charges because they arose out of his acts in 2011, in contravention of the 2012 plea agreement. We disagree.

A trial court's ruling regarding a motion to dismiss is generally reviewed for an abuse of discretion. *People v Adams*, 232 Mich App 128, 132; 591 NW2d 44 (1998). However, any findings of fact by the trial court are reviewed for clear error, *People v Swirles (After Remand)*, 218 Mich App 133, 136; 553 NW2d 357 (1996), and any questions of law are reviewed de novo, *People v Denson*, 500 Mich 385, 396; 902 NW2d 306 (2017). This Court applies principles of contract interpretation when interpreting a plea agreement. *People v Martinez*, 307 Mich App 641, 651-652; 861 NW2d 905 (2014). The proper interpretation of a contract, including whether a contract is ambiguous, is reviewed de novo as a question of law. *Klapp v United Ins Group Agency*, 468 Mich 459, 463; 663 NW2d 447 (2003). However, the meaning of an ambiguous contract is a question of fact, to be decided by the trier of fact. *Id.* at 469.

Preliminarily, plaintiff argues that defendant is judicially estopped from challenging the trial court's ruling because when plaintiff filed its application for leave to appeal the trial court's dismissal of the home invasion and armed robbery charges, defendant took the position that the trial court properly determined that the plea agreement was not ambiguous and its ruling should be affirmed. We disagree. Defendant's statements in opposing the prior appeal must be considered in context, and thus limited to discussing the dismissal of his home invasion and armed robbery charges. The application of judicial estoppel requires a party to have taken a position that is "wholly inconsistent" in a prior proceeding, and it is applied for the purpose of precluding legal gamesmanship. See *Wells Fargo Bank, NA v Null*, 304 Mich App 508, 537; 847 NW2d 657 (2014). We do not believe it to be "wholly inconsistent" for defendant to contend that the plea agreement unambiguously precluded the home invasion and robbery charges while also contending that the agreement is ambiguous regarding any other uncharged conduct from 2011. Therefore, we reject plaintiff's judicial estoppel argument.

A contract is ambiguous where it is capable of conflicting interpretations. *Klapp*, 468 Mich at 467. That is, an ambiguity will be found "when [a term] is equally susceptible to more than a single meaning." *Holland v Trinity Health Care Corp*, 287 Mich App 524, 527; 791 NW2d 724 (2010) (quotation omitted). In the context of plea agreements, contract principles so long as they serve the interests of justice, and words are given their common meanings and unambiguous contracts will be enforced as written. See *Martinez*, 307 Mich App at 651-652. Importantly, a contract is not ambiguous unless it fairly permits multiple *reasonable* interpretations, irrespective of how inartfully it might be drafted. *Woodington v Shokoohi*, 288 Mich App 352, 374; 792 NW2d 63 (2010). The ultimate goal of contractual interpretation, which prevails over any other consideration, is to ascertain and give effect to the intentions of the parties. *Detroit Trust Co v Manilow*, 272 Mich 211, 218; 261 NW 303 (1935). However, "unless a contrary intention appears," language is generally "read and understood in its

grammatical context." *Sun Valley Foods Co v Ward*, 460 Mich 230, 237; 596 NW2d 119 (1999).[2]

The relevant portion of the plea agreement, the "additional considerations" section, states, "Δ shall not be prosecuted for any other HI's/A.R. during summer 2011 investigated by FPD." We find nothing ambiguous about this statement. It is undisputed that, translated to full English, this provides that "defendant shall not be prosecuted for any other home invasions/armed robberies during summer 2011 investigated by the Flint Police Department." The word "shall" is unambiguously mandatory. *People v Grant*, 445 Mich 535, 542; 520 NW2d 123 (1994). The only grammatically reasonable way to understand the rest of the sentence is that "investigated by the Flint Police Department modifies "home invasions/armed robberies during summer 2011," which in turn is what "shall not be prosecuted." See *Sun Valley Foods*, 460 Mich at 237 (discussing the last antecedent rule). The phrase "prosecuted for" clearly indicates the particular charges that shall not be pursued. We perceive nothing on the face of the agreement to suggest that it applies to any conduct other than: (1) a home invasion or armed robbery, (2) that was committed during the summer of 2011, *and* (3) that was investigated by the Flint Police Department. The plea agreement is therefore facially unambiguous and did not preclude prosecuting defendant for any other crimes he committed during that time period.

Nevertheless, the written plea agreement did not occur in a vacuum. As noted, at the plea hearing, the prosecutor stated that the plea deal would "wrap up" defendant's "crime spree" from the summer of 2011. Defendant's attorney, with somewhat more nuance, also stated that it would "wrap[] up any and all similar type conduct" from that time period. Defendant's response to the trial court's somewhat unclear inquiry appears to indicate that he also understood the deal to be that he would not be prosecuted for any other crimes he committed during the summer of 2011. As a consequence, we conclude that the testimony given at the plea hearing, on the record, clearly reveals a latent ambiguity in the plea agreement. See *Shay v Aldrich*, 487 Mich 648, 667-668; 790 NW2d 629 (2010). In particular, the resulting agreement is ambiguous as to whether it specifically precludes charges only for home invasion or armed robbery, or whether it more generally precludes charges for any crimes arising out of transactions involving home invasion or armed robbery. It was therefore proper for the trial court to hold an evidentiary hearing to determine the parties' intent.

At the evidentiary hearing, testimony was presented from the prosecutor from 2012, the attorney who represented defendant in 2012, and a retired Flint Police detective who had worked on several cases involving defendant in 2011 to 2012. The detective stated that defendant had been a suspect in Pedro's murder at the time, but that he never disclosed that fact to the prosecutor. The prosecutor testified that his office was aware that defendant had "a bunch" of open files and there were still other complaints pending for crimes committed in 2011. However, he denied having any knowledge that defendant was considered a suspect in a homicide case, and said he would have specifically mentioned a homicide case in the plea

---

[2] Although *Sun Valley Foods* involved construction of a statute, the principles of statutory and contractual interpretation are essentially the same. See *Klapp*, 468 Mich at 468.

agreement if it was intended to be covered by the agreement. The prosecutor denied that the agreement was ever intended to cover a charge of felony murder, and stated that it was intended to encompass any other home invasions and armed robberies from the time period that had been investigated by the police.

Defendant's attorney from 2012 similarly testified that he had no knowledge that defendant was potentially connected to a homicide case at the time of the agreement. Neither defendant nor the prosecutor had ever mentioned any connection to a possible murder investigation. Counsel stated that he would have added a specific reference to a murder case if he intended to have it resolved by the agreement. Defense counsel explained that he requested the "Additional considerations" provision because, based on defendant's history, he suspected that defendant may have been involved in other matters and he wanted to make sure "that all home invasions and armed robberies [were] closed up" by the plea agreement. Counsel stated "that if there were any further home invasions, armed robberies, anything that was a similar type conduct out there, that this cleans him up so he can proceed to a sentence and do his time and be done with it." This testimony is consistent with his statement at the plea hearing that the agreement "wraps up any and all *similar type conduct* during the events – during the events of the summer of 2011" (Emphasis added).

In light of this testimony, and the fact that none of the parties to the plea agreement mentioned or were even aware of any potential homicide case, the trial court did not clearly err by finding that the parties did not intend for the plea agreement to extend to the additional charges in this matter—for offenses other than home invasion and armed robbery. There could be no meeting of the minds that the plea agreement was intended to cover any such other charges. Additionally, the interests of justice do not support defendant's position. It does not serve the interests of justice to apply the plea agreement to a charge of felony murder that no one considered or contemplated at the time the agreement was reached, especially where defendant also did not disclose any possible homicide or request broader language. Although prosecutors are bound by unwise plea bargains, *Martinez*, 307 Mich App at 653, they are not bound by agreements they did not actually make. The trial court did not clearly err by finding that the parties never intended for the 2012 plea agreement to extend to a homicide, or indeed any crime other than home invasion or armed robbery, even if it was perpetrated during the commission of a home invasion or robbery. Accordingly, the trial court did not err by refusing to dismiss the remaining charges in this case.

III. AMENDMENT OF THE INFORMATION

Next, defendant argues that the trial court erred by allowing the prosecution to amend the information to add a new count of larceny of $200 or more but less than $1,000, MCL 750.356(4)(a), and to amend the felony-murder count to list that larceny offense as the predicate offense for felony murder. We disagree.

MCR 6.112(H) provides that "[t]he court before, during, or after trial may permit the prosecutor to amend the information . . . unless the proposed amendment would unfairly surprise or prejudice the defendant." A trial court's decision to grant or deny a motion to amend an information is reviewed for an abuse of discretion. *People v McGee*, 258 Mich App 683, 686-687; 672 NW2d 191 (2003). "A trial court abuses its discretion when its decision falls outside

-5-

the range of reasonable and principled outcomes, or makes an error of law." *People v Swain*, 288 Mich App 609, 628-629; 794 NW2d 92 (2010) (citations omitted).

Defendant argues that the larceny charge is precluded by the 2012 plea agreement because it is a lesser included offense of robbery.[3] Larceny could at one time have been a lesser included offense of robbery, but only larceny from the person. *People v Beach*, 429 Mich 450, 484; 418 NW2d 861 (1988). However, even that is no longer the case, and "larceny-from-the-person is no longer a necessarily included lesser offense of robbery." *People v Smith-Anthony*, 494 Mich 669, 687 n 53; 837 NW2d 415 (2013). Otherwise, "larceny is committed when one steals the property of another *outside* the person's presence." *People v Perkins*, 473 Mich 626, 634 n 9; 703 NW2d 448 (2005) (emphasis added). The amendment did not seek to add a charge of larceny from the person, MCL 750.357, but rather sought to charge defendant with larceny of $200 or more but less than $1,000, MCL 750.356(4)(a). A person can commit the offense of robbery by stealing property from a person regardless of the value, MCL 750.529, but the added charge required proof that defendant stole property with a specific monetary value. Thus, larceny of $200 or more but less than $1,000 is not a necessarily included lesser offense of robbery. Because the 2012 plea agreement did not cover crimes other than home invasions or armed robberies, it did not preclude the charge of larceny of $200 or more but less than $1,000.

Defendant does not otherwise claim that he was surprised by the amendment. Accordingly, the trial court did not err by granting the prosecution's motion to amend to add the charge of larceny of $200 or more but less than $1,000, and allowing that charge to serve as the predicate offense for the felony-murder charge.

## IV. OTHER-ACTS EVIDENCE

Defendant next argues that the trial court erred by allowing the prosecution to present evidence of his involvement in three other offenses in the same area of Flint during the same general time period in which the charged offense was committed. Defendant argues that the evidence amounted to nothing more than character evidence impermissible under MRE 404(b), and in any event it should have been excluded under MRE 403 because of its prejudicial effect. We disagree.

MRE 404(b)(1) prohibits evidence of a defendant's other bad acts "to prove the character of a person in order to show action in conformity therewith," but permits such evidence for other, noncharacter purposes. MRE 404(b)(1) is a rule of inclusion and "[e]vidence relevant to a noncharacter purpose is *admissible* under MRE 404(b) *even if* it also reflects on a defendant's character." *People v Mardlin*, 487 Mich 609, 615; 790 NW2d 607 (2010). "Evidence is inadmissible under this rule *only* if it is relevant solely to the defendant's character or criminal

---

[3] Defendant also argued below that because larceny of $200 or more but less than $1,000 is designated a misdemeanor, MCL 750.356(4)(a), it could not serve as a predicate felony for the felony-murder charge. Under MCL 750.316(1)(b), however, "larceny of any kind" is a permissible predicate offense for felony murder. *People v Bass*, 317 Mich App 241, 267; 893 NW2d 140 (2016).

propensity." *Id.* at 615-616. Under MRE 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *People v Sabin (After Remand)*, 463 Mich 43, 57-58; 614 NW2d 888 (2000). We review the trial court's decision whether to admit evidence for an abuse of discretion, but we review de novo any preliminary questions of law. *Denson*, 500 Mich at 396.

The prosecution introduced evidence that on June 8, 2011, defendant entered a home during the night looking for drugs and money, robbed the family of other valuables, and left the house with the valuables, which he loaded into a resident's vehicle. A second incident occurred at the home of another couple late at night on June 14, 2011. That home was two or three blocks from where Pedro's murder was committed. In the third incident, defendant entered a home and robbed a family during the early morning hours of June 11, 2011. Defendant entered guilty pleas in these three cases, pursuant to the previously mentioned plea agreement. The court admitted this evidence pursuant to MRE 404(b)(1).

Defendant affirmatively "admits that the prosecution stated a proper purpose for the propensity [sic] evidence." Defendant's argument is essentially that the prosecution's stated purpose was a sham. The prosecution has the initial burden of establishing the relevancy of the evidence for a permissible purpose under MRE 404(b)(1). *People v Knox,* 469 Mich 502, 509; 674 NW2d 366 (2004). The evidence was offered for its probative value in establishing defendant's identity as the person responsible for the charged offense, which was a disputed issue in the case. The prosecutor sought to establish defendant's identity by showing that the commission of the instant offense was a manifestation of defendant's common scheme or plan in committing like offenses in the same area, during the same general time period. To establish the existence of a common design or plan, there must be sufficient common features to infer the existence of a plan rather than a series of similar spontaneous acts, but the plan revealed need not be distinctive or unusual. *Sabin*, 463 Mich at 65-66.

The other-acts evidence involved defendant's commission of similar crimes, for which he had entered guilty pleas. The other offenses were committed around the same period of time as the instant offense, in the same general area of the city of Flint. In addition, the other crimes and the instant offense shared the common features of breaking into occupied homes late at night or early in the morning, when the occupants were likely asleep, and then attempting to corral the occupants together and hold them at gunpoint while searching the homes for valuables. The cases also showed a similar pattern of defendant needing to take the victims' vehicles to get away, but then offering to call the victims to let them know where they could retrieve their vehicles. Although a vehicle was not taken in this case, defendant had demanded the keys to a Mustang in the driveway, but then had to abruptly leave when he was confronted by Pedro, which led to an exchange of gunfire. However, Elisa's driver's license, which was taken during the offense, was returned to her in the mail a week or two later. The jury could find that the courtesy return of the driver's license, like the courtesy call regarding the location of the stolen vehicles in the other cases, was a unique feature that showed a similar scheme, plan, or method of attempting to return property that defendant no longer needed or was not interested in. Accordingly, the trial court did not abuse its discretion by finding that the evidence was relevant for a permissible, noncharacter purpose under MRE 404(b)(1).

Defendant also argues that the evidence should have been excluded under MRE 403 because of its prejudicial effect. Unfair prejudice under MRE 403 does not refer to any damaging evidence, but rather to "the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *People v Pickens*, 446 Mich 298, 337; 521 NW2d 797 (1994) (quotation omitted). To determine if evidence should be excluded under MRE 403, the trial court should balance the following factors:

> [T]he time required to present the evidence and the possibility of delay, whether the evidence is needlessly cumulative, how directly the evidence tends to prove the fact for which it is offered, how essential the fact sought to be proved is to the case, the potential for confusing or misleading the jury, and whether the fact can be proved in another manner without as many harmful collateral effects. [*People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008).]

"Unfair prejudice may exist where there is a danger that the evidence will be given undue or preemptive weight by the jury or where it would be inequitable to allow use of the evidence." *Id*.

Importantly, the defense denied that defendant was responsible for the charged offense. In a recorded police interview that was admitted at trial,[4] defendant denied ever being in the area of Flint where the crime was committed. However, defendant pleaded guilty to the other offenses, which were committed in the same geographic area, and the similarities between the other cases and this case were probative of defendant's identification as a participant in this offense. Before the other-acts evidence was presented, the trial court instructed the jury on the limited, permissible purpose of the evidence, and it repeated that instruction in the final jury instructions, telling the jury that it "must not decide that [the evidence] shows that the Defendant is a bad person, or that he is likely to commit crimes" and "[y]ou must not convict the Defendant here because you think he is guilty of other bad conduct." These instructions reduced the likelihood of any unfair prejudice, and "[j]urors are presumed to follow their instructions." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). The trial court did not abuse its discretion by ruling that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.

## V. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the evidence was insufficient to prove the malice element of felony murder. We disagree. A defendant's challenge to the sufficiency of the evidence is reviewed de novo. *People v Harverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010). We must review the evidence in a light most favorable to the prosecution to determine whether there was sufficient evidence to justify a rational trier of fact in finding the defendant guilty beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 513-515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). "Circumstantial evidence and reasonable inferences drawn therefrom may be sufficient to prove the elements of a crime." *People v Jolly*, 442 Mich 458, 466; 502

---

[4] We discuss the propriety of admitting the interview *infra*.

NW2d 177 (1993). "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Williams,* 268 Mich App 416, 419; 707 NW2d 624 (2005). All conflicts in the evidence must be resolved in the prosecution's favor. *Id.*

In *People v Carines*, 460 Mich 750, 758-759; 597 NW2d 130 (1999), our Supreme Court set forth the elements of felony murder as:

> (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result [i.e., malice], (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in [the statute, including armed robbery]. [Citation omitted, alterations by the *Carines* Court.]

Defendant only challenges the element of malice. "The facts and circumstances of the killing may give rise to an inference of malice." *Carines*, 460 Mich at 759. "A jury may infer malice from evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm." *Id.* "Malice may also be inferred from the use of a deadly weapon." *Id.*

The evidence at trial indicated that defendant was armed with a loaded gun and was prepared to use it. Indeed, he knew that the gun was loaded and operational because he fired shots at some dogs during the offense, before his confrontation with Pedro. After Pedro retreated from the bedroom, both Elisa and Pablo observed defendant leaving the bedroom and firing his gun as he left. Pedro was shot in the thigh. The jury could infer from this evidence that defendant intentionally fired his gun at Pedro. Defendant's possession and use of a loaded firearm, together with his decision to discharge that firearm at Pedro, was sufficient to allow the jury to find beyond a reasonable doubt that defendant possessed the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result. *Carines*, 460 Mich at 759. Accordingly, there was sufficient evidence of malice to support defendant's felony-murder conviction.

## VI. DEFENDANT'S INTERVIEW STATEMENT

Defendant also argues that the introduction of his recorded police interview at trial denied him a fair trial because it infringed on his presumption of innocence. Defendant concedes that his interview was admissible under MRE 801(d)(2)(A), as a party's own statement, but he argues that the statement should have been excluded under MRE 403 because its probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or its tendency to mislead the jury. We disagree. Because defendant did not object to the introduction of this evidence at trial, this issue is unpreserved. MRE 103(1)(a). We review unpreserved issues for plain error affecting a defendant's substantial rights. *Carines*, 460 Mich at 763-764. An error is plain if it is clear or obvious, and an error affects substantial rights if it is prejudicial, i.e., if it affects the outcome of the proceedings. *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003).

Defendant argues that the police officer's questions during the interview suggested that defendant was lying or needed to prove his innocence, and thereby shifted the burden of proof and infringed on defendant's presumption of innocence. After reviewing the entire record and reviewing defendant's police interview in context, it is neither clear nor obvious that the interview infringed on defendant's right to be presumed innocent. The evidence was probative because it conveyed defendant's position with regard to the charges in this case in response to police questioning. It was not unduly prejudicial because defendant consistently maintained his innocence during the interview, despite accusations or implications that he was lying or was involved. Defendant has not shown that it was unfair or inequitable for the jury to hear both defendant's responses and the officer's questions during the interview. See *Blackston*, 481 Mich at 462. In addition, the trial court instructed the jury that it "must start with the presumption that the Defendant is innocent," that "the prosecutor must prove each element of the crime beyond a reasonable doubt," and that "[t]he Defendant is not required to prove his innocence or to do anything." The court's instructions were sufficient to alleviate defendant's concerns regarding the presumption of innocence and to protect defendant's substantial rights. Again, we presume the jurors followed their instructions. *Abraham*, 256 Mich App at 279.

Affirmed.

/s/ Anica Letica
/s/ Amy Ronayne Krause
/s/ Mark T. Boonstra